James A. CHUTE, Plaintiff,

v.

CITY OF CAMBRIDGE, Ronnie Watson, in his official capacity as Cambridge Police Commissioner, George Walker, Individually and in his official capacity as Cambridge Police Officer, and Unknown Police Officers, Individually and in their official capacity as Cambridge Police Officers, Defendants.

Civ.A. No. 00–11534–REK.

United States District Court,
D. Massachusetts.

June 12, 2001.

William F. Green, Cambridge, MA, Valeriano Diviacchi, Diviacchi Law Office, Boston, MA, for plaintiff.

Nancy B. Schlacter, Law Department— City Hall, Cambridge, MA, Thomas J. Urbelis, Urbelis, Fieldsteel & Bailin, LLP, Boston, MA, for defendants.

## Opinion

KEETON, District Judge.

### I.

Pending for decision are the following filings:

(1) City Defendants' Assented to Motion to Stay Discovery (Docket No. 10, filed February 16, 2001);

(2) Plaintiff, James A. Chute's, Motion for Relief From Judgment Pursuant to Fed. R.Civ.P. 60(b) (Docket No. 11, filed February 28, 2001);

(3) Plaintiff, James A. Chute's, Amendment to His Motion for Relief From Judgment Pursuant to Fed.R.Civ.P. 60(b) (Docket No. 13, filed March 12, 2001);

(4) Defendants' Opposition to Plaintiff's Motion for Relief From Judgment (Docket No. 14, filed March 13, 2001); and

(5) Letter by Valeriano Diviacchi dated March 19, 2001 to the court (Docket No. 19, filed March 22, 2001).

### II.

In the Order below, Docket No. 10 is dismissed as moot in view of the Final Judgment ordered on February 15, 2001.

### III.

Plaintiff, James A. Chute's, Motion for Relief From Judgment Pursuant to Fed. R.Civ.P. 60(b) (Docket No. 11) asserts:

1. Plaintiff was never served with any motion to dismiss by George Walker in his individual capacity, nor was plaintiff served with any motion to dismiss on behalf of unknown police officers in their individual capacities.

2. The plaintiff was served a motion to dismiss pursuant to FRCP 12(b)(6) by the City of Cambridge as to Counts II, III and IV only on or about September 5, 2000.

3. The said City of Cambridge's Motion to Dismiss stated that the motion was being brought in behalf of George Walker and the Unknown Police Officers in "... their official capacities only," and that said motion was not directed to the remaining counts of plaintiff's complaint in that "The remaining Counts in the Complaint do not appear to be directed against the City or the other defendants in their official capacities." (See City of Cambridge's motion attached as Exhibit 1 hereto).

4. The City of Cambridge's said motion was in fact received by plaintiff's counsel, and is contained in plaintiff's file. Through plaintiff's counsel's inadvertence, or excusable neglect plaintiff's counsel was not aware of the existence of said motion until on or about February 13, 2001, when he was contacted by City of Cambridge's attorney regarding a stay of discovery due to the pendency of the City of Cambridge's motion to dismiss. Plaintiff's counsel assented to the motion to stay, and stated to City of Cambridge counsel that he was out of the office and did not have plaintiff's file, but that he would look for the motion to dismiss when he returned to his office.

5. Upon plaintiff's counsel's return to his office on February 26, he found this Court's Memorandum and Order dated February 15, 2001 dismissing all counts of Plaintiff's complaint.

6. Plaintiff's counsel has practiced law in this Commonwealth for some twenty-eight years, and has never failed to respond to a pleading. Plaintiff's counsel failure to respond to the City of Cambridge's motion to dismiss was due to the fact that he was unaware of the motion existence until February 13, 2001.

7. As to any motion to dismiss relative to defendants Walker and other unknown police officers in their individual capacities, plaintiff's counsel has never received any such motion.

Docket No. 11 at 1–2.

Defendant George Walker's Motion to Dismiss Count Three (Docket No. 2, filed September 5, 2000) and the Memorandum in Support (Docket No. 3, filed September 5, 2000) were filed by the only attorney who has made an appearance for any of the defendants in this case. He has not represented to the court in his filings that he has been authorized by any person to represent that person individually. Instead, he has represented that he has been and is authorized to

represent the City of Cambridge and its officials when sued in an official capacity.

Plaintiff's statements in Docket No. 11, recited above, indicate that plaintiff's attorney has understood that the attorney of record for defendants is representing the City of Cambridge and its officials sued in their official capacity.

It is well settled that filing a civil action against a city official in that person's official capacity is simply another way of suing the city itself.

When a plaintiff brings a civil action against a governmental agency, and against a person who is an official of the agency in that person's official capacity, it is critical that the parties be properly identified to provide complete clarity as to who the parties are and in what capacity they are being sued. Attention to this detail is significant because it aids the court in determining what law it will apply to each party. As stated in *Stratton v. City of Boston*, 731 F.Supp. 42, 45 (D.Mass. 1989), allegations of claims against a person that identify that person both by name and by official title are ambiguous.

For example, qualified immunity, as a defense to a claim brought under 42 U.S.C. § 1983, is available only to a person who has been sued in that person's individual capacity. *See Stratton*, 731 F.Supp. at 45. A judgment awarding money damages against a person in that person's individual capacity is enforceable against the assets of that individual. In contrast, a judgment awarding money damages against a person in that person's official capacity is enforceable, if at all, only against assets of the public entity of which that defendant was an official when acting. *See id.* This is so because a civil action against a person in that person's official capacity is, in essence, a civil action against the entity that the person represents when acting in her or his official capacity. *See id.* at 46.

Also, effective service on the individual is essential to enforcement of a judgment against that individual, sued in individual capacity. The record in this case does not include any showing that a complaint and summons has been served in the manner required by law on a defendant individually. In these circumstances, it would be inappropriate for this court to order any judgment against any defendant individually. Not only would ordering such a judgment be unauthorized, also it would be very misleading, because it could not be enforced without a showing that effective service had been made. It is more appropriate for this court to require that showing to be made in this case before any judgment it orders against any person in individual capacity.

Even if jurisdiction is not contested by a defendant haled into federal court, or by a plaintiff who filed the case in a state court and received notice that a defendant or defendants removed it to federal court, the court itself is responsible for dismissing a filed case or remanding a removed case if the court lacks jurisdiction. Stated another way, the point is that the court has an obligation not to hear and decide a case over which it has no subject-matter jurisdiction, even if all the parties wish the court to do so.

The phrase "subject-matter jurisdiction," used just above, refers to a legal test regarding jurisdiction, whose elements are concerned with the subject matter of the claim as distinguished from characteristics and conduct of the persons who are plaintiffs and defendants. Even if a court has subject-matter jurisdiction over claims of the type a plaintiff asserts, the court lacks power to hale a defendant into court unless the court also has personal jurisdiction (that is, jurisdiction over that person) or the defendant consents, or manifests acquiescence by failing to challenge personal jurisdiction.

Keeton, *Judging in the American Legal System*, § 6.4.2 (Lexis Law Publishing, 1999) (citations omitted).

Clarity of pleadings with respect to party capacity is fundamental, as explained in another section of this book.

§ 16.5.1 Clarifying Party Capacity

§ 16.5.1(a). Introduction

Misunderstanding, delay, and waste of resources often result from ambiguity of pleadings with respect to whether a named party is suing or being sued as an individu-

al or instead in some other capacity. For example, an official of a governmental agency or a corporation may be sued only as a representative of that entity and not as an individual.

An illustration of the problem is a complaint that was filed by two persons, acting *pro se*, in *Stratton v. City of Boston* [731 F.Supp. 42, 46 (D.Mass.1989)]. The complaint identified the defendants as "Boston City Police Department, Francis Roache, Commissioner, and Certain Unknown Officers."

Defense counsel filed a Motion to Dismiss on behalf of the Boston City Police Department and Francis Roache, Commissioner, the only defendants upon whom service had been made at the time the motion was filed.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss may be allowed if the plaintiffs fail to state a claim upon which relief may be granted. Defense counsel contended that the claims against the Boston City Police Department should be dismissed because the Boston City Police Department is not a legal entity, and asked the court to dismiss the claims against Commissioner Roache on the ground that the allegations in the complaint against defendant Roache were conclusions and not supported by material facts.

The *pro se* complaint alleged facts in a separate "facts" section and then stated claims in eight separate counts. Each claim was alleged against all of the defendants.

### § 16.5.1(b). Fictitious Names

Rule 10(a) of the Federal Rules of Civil Procedure states that the title of the action in the complaint must include the names of all the parties. Although the Federal Rules do not explicitly prohibit the use of fictitious names for parties, an action may be dismissed as to a defendant who is not sufficiently identified to permit service of process. Moreover, "the use of a fictitious name for a defendant will not be permitted if ignorance of the defendant's identity is the result of ... lack of reasonable inquiry." In *Stratton*, the illustrative case described in Part (1) above, the facts presented in all submissions before the court at the time of ruling on the motion to dismiss made it appear that the plaintiffs could have inquired and obtained the names of the police officers on duty on the night of the incident on which the suit was based. For this reason, the case was not allowed to proceed against defendants designated as "Certain Unknown Officers." Nevertheless, it was appropriate to allow leave to file an amended complaint within a reasonable period of time after entry of the court's order, rather than dismissing immediately the claims against "Certain Unknown Officers."

. . . . .

### § 16.5.1(d). Claims Against a Municipality

Local governments, as stated in *Owen* [*v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980) ], ordinarily do not have immunity. Thus, as stated in *Monell* [*v. New York City Dept. of Social Services*, 436 U.S. 658, 662, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ], the City of Boston may be sued under 42 U.S.C. § 1983 for civil rights violations. Nevertheless, as also stated in *Monell*, in order to succeed in a § 1983 action against a local government, the plaintiffs must establish that they were injured by acts that were performed within the scope of a public policy or custom and that deprived them of their constitutional rights.

"Public policy," as used in this context, concerns primarily any ordinance or regulation of the public entity, but in some instances extends also to custom or practice. To be relevant, as *Monell* makes clear, a custom or practice must be a well established practice, although the practice need not be formally adopted in order to give rise to liability under § 1983.

A plaintiff may bring an action against a municipality for the acts of its employees if those acts violated the plaintiff's constitutional rights and the acts were the result of a custom or practice in accordance with a municipal policy. Nevertheless, as the Court declared in *Monell*, "a municipality cannot be held liable *solely* because it em-

ploys a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Instead, the plaintiff must show that by acting in accordance with a municipal policy, the employee violated the plaintiff's civil rights.

One of the counts in the *pro se* complaint in *Stratton* alleged a violation of the Due Process Clause of the Fourteenth Amendment, asserting "state action" in that police officers acting within the scope of their official duties deprived plaintiffs of their rights to a breathalyzer test as allowed under Mass.Gen.L. ch. 111B, § 8. Plaintiffs also claimed that they were detained without probable cause because they were not apparently intoxicated when they were stopped and taken into protective custody. Also, the plaintiffs alleged that the implementation of the Massachusetts protective custody statute, Mass.Gen.L. ch. 111B, § 8, is unconstitutional under the Fourth and Fourteenth Amendments.

The facts set forth in the original complaint in *Stratton* provided a basis for a determination that one or more police officers, unidentified by name, had deprived the plaintiffs of their rights. The complaint, however, merely stated one incident of an alleged civil rights violation. The complaint did not link any of its designated claims to a policy of Commissioner Roache, the Boston Police Department or any other policy-making official or agency of the City of Boston. Without such a showing, municipal liability under § 1983 was not supportable.

§ 16.5.1(e). Claims Against an Official Individually

In addition to the claims against Commissioner Roache in his official capacity in *Stratton*, the plaintiffs' complaint could be read as attempting to state claims against Roache in his individual capacity. For the reasons stated in Section 16.5.1(c) above, the court's interlocutory order was an attempt to avoid misunderstanding that could arise from the manner in which the parties were named in the complaint. Accordingly, to the extent that plaintiffs wished to assert, in an amended complaint,

any claims against Francis Roache in his individual capacity, the order directed plaintiffs to refer to him as "Francis Roache, individually."

The federal-law claims against Commissioner Roache, individually, were civil rights claims arising under 42 U.S.C. § 1983. In cases arising under § 1983, qualified immunity will protect a public official from personal liability if that official acted in "good faith," as defined objectively. This "good faith" standard shields the officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thus, as long as the public official did not act in violation of this qualified immunity standard, he or she would not be personally liable for any violation of the plaintiffs' civil rights.

Before *Leatherman v. Tarrant County Narcotics Intelligence & Coordinating [Coordination] Unit* [507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)] was decided, precedent required that a plaintiff, in order to defeat the defense of qualified immunity, "before commencing the suit, must be prepared with a *prima facie* case of defendant's knowledge of impropriety, actual or constructive." In these circumstances, because the plaintiffs failed to state a claim upon which relief could be granted, the federal-law claims against Francis Roache, individually, were dismissed. Post–*Leatherman,* a more appropriate managerial decision would be to enter a particularity-of-claim order or in some other way proceed to clarification of the grounds of the claim.

Once the federal-law claims were dismissed in *Stratton,* only state-law claims remained. Absent any federal-law claim that would enable the court to take supplemental jurisdiction of the state-law claims, the state-law claims as well were dismissed for lack of federal jurisdiction.

The interlocutory order dismissed all claims against Commissioner Roache in his individual capacity, but with leave to amend.

*Id.* at § 16.5.1(a), (b), (d), and (e) (footnotes omitted).

Plaintiff's original Attorney–of–Record Green asserted, in paragraph 3 of his filing quoted above, "The remaining Counts [other than II, III, and IV] in the Complaint do not appear to be directed against the City or the other defendants in their official capacities." This statement does not explain why they "do not appear to be directed against the City or the other defendants in their official capacities." Indeed, as I then read the Complaint in considering the matters before me at the time of preparing my Memorandum and Order of February 15, 2001, I construed the Complaint as making claims against "the other defendants" in their official capacities throughout the Complaint. Of course, in view of the authorities cited above on the nature of "official capacity" claims, this meant also that all claims throughout the Complaint were in effect claims against the City of Cambridge.

The basis on which I acted in ordering dismissal of the entire case is stated in the last paragraph of the Memorandum:

> The First Cause of Action asserts that plaintiff is entitled to recovery under 42 U.S.C. § 1983. It is well established in precedents, however, that § 1983 merely provides a remedy for violation of some right under federal law that is not independently remediable under some other provision of the Constitution and laws of the United States. The allegations in the "First Cause of Action" regarding the nature of plaintiff's alleged federal rights show that they are the same substantive claims as made in the other "Causes of Action" alleged. In the circumstances of this case, the assertion of the "First Cause of Action" does not defeat the defenses identified in the next preceding paragraph. Thus, the "First Cause of Action" is appropriately dismissed if no other "Cause of Action" in the complaint survives the comprehensive defense motion to dismiss (Docket No. 6).

Docket No. 8 at 2.

In these circumstances, Plaintiff, James A. Chute's, Motion for Relief From Judgment Pursuant to Fed.R.Civ.P. 60(b) (Docket No. 11) was inadequate to show good cause for setting aside the judgment of February 15, 2001.

The court's interpretation of the original complaint as one making only official-capacity claims was reasonable. The City of Cambridge, under that interpretation, was the only defendant. The City has a clear interest in not allowing the judgment to be set aside to convert the case into one that could not be closed without final adjudication of newly asserted claims against individual defendants or else persuasion of both this court and the Court of Appeals for the First Circuit that a separate final judgment under Rule 54(b) of the Federal Rules of Civil Procedure would not risk duplicative appeals.

## IV.

On March 15, 2001, the court received a Notice of Withdrawal of Counsel (Docket No. 18) informing the court that plaintiff Chute had obtained new counsel. Plaintiff's New Counsel, Attorney Diviacchi, wrote a letter to the court (Docket No. 19) claiming:

> In order to simplify the issues, I am waiving that portion of the Rule 60(b) motion seeking to vacate the dismissal of the City of Cambridge, the individual defendants in their official capacity, and Count III. Plaintiff is only moving to vacate the dismissal of Defendant Walker and the unknown police officers in their individual capacity as to Counts I, II, V, VI, VII, VIII, and IX. As stated in the Rule 60(b) motion, Plaintiff respectfully submits that the dismissal should be vacated as to these counts because there was never any motion filed to dismiss these counts as to the individual defendants and therefore there was no need for the filing of an opposition; furthermore, there is no basis for a *sua sponte* dismissal of these counts as to the individual defendants.

Docket No. 19 at 1.

In dismissing as moot Defendant Walker's Motion to Dismiss Count Three (Docket No. 2), I stated in the Memorandum and Order of February 15, 2001:

> Defendant Walker's separate Motion to Dismiss Count Three (Docket No. 2, filed

September 5, 2000) is a more limited motion that applies to the "Third Cause of Action" only and on a special ground. It is appropriate to dismiss this motion on the "Third Cause of Action" as moot if the comprehensive motion to dismiss filed on behalf of all defendants has merit.

Plaintiff has filed no response. I have nevertheless examined on the merits the comprehensive defense motion presented in Docket No. 6 and have concluded that it is well founded. Preclusions of liability incident to statutory defenses and limitations, immunities, and preclusion of ordinary respondeat superior liability of municipalities defeat all of the "Causes of Action" asserted.

Docket No. 8 at 1–2.

Thus, the letter from Attorney Diviacchi (Docket No. 19) fails to show good cause for setting aside the final judgment ordered by the court and entered by the clerk on the docket in this case.

In order to assure that plaintiff's rights on the merits are protected, however, I will allow a further opportunity for a filing for plaintiff, after notice of this Opinion, showing the grounds of alleged good cause, if any is claimed to exist, for relief from that judgment. If a further filing is submitted on behalf of plaintiff on or before June 29, 2001, defendants may file a response on or before July 20, 2001.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) City Defendants' Assented to Motion to Stay Discovery (Docket No. 10) is DISMISSED AS MOOT.

(2) Ruling on Plaintiff, James A. Chute's, Motion for Relief From Judgment Pursuant to Fed.R.Civ.P. 60(b) (Docket No. 11) is deferred. Plaintiff may submit a filing on or before June 29, 2001, showing the grounds of alleged good cause, if any is claimed to exist, for relief from the judgment of February 15, 2001. If a filing is submitted on behalf of plaintiff on or before that date, defendants

may file a response on or before July 20, 2001.