**John T. SHEEHAN, Jr., Executor of the Estate of John T. O'Brien; and James T. Connell, Appellants,**

**v.**

**Andrew S. RICHARDSON, Trustee of Newport Creamery, Inc., Appellee.**

No. C.A.03–395L.

United States District Court, D. Rhode Island.

Sept. 29, 2004.

Kevin D. Heitke, Harrisville, RI, for appellant.

John Paul Boyajian, Boyajian, Harrington & Richardson, Providence, RI, for appellee.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court as an appeal from a judgment entered by the Bankruptcy Court for the District of Rhode Island against John T. Sheehan, who was Executor of the Estate of John O'Brien, and James T. Connell, who was a residuary beneficiary of that Estate (hereinafter "Appellants"). Appellants seek a reversal of the Bankruptcy Court's decision granting summary judgment in this case on one count of usury (Count I), *see* R.I. Gen. Laws § 6–26–2(a) (2000), and one count for violation of the Rhode Island

Racketeer Influenced and Corrupt Organizations ("RICO") statute (Count IV), R.I. Gen. Laws § 7–15–1(d)(1985); § 7–15–2(a) (1979), in favor of Appellee, Andrew Richardson, the Bankruptcy Trustee for Newport Creamery, Inc.,[1] (hereinafter "the Trustee"). At the time of the hearing, the Bankruptcy Court also denied the Trustee's motion for summary judgment on Count III which alleged that there had been a fraudulent conveyance to the Appellants.[2] Roughly two months after these decisions were made, the Trustee filed a Motion for Entry of Separate and Final Judgment as to Counts I and IV (the usury and state RICO claims). The motion was granted and judgment was entered on those Counts and this appeal ensued. Counts II and III (both alleging a fraudulent conveyance) were not resolved, therefore, those Counts are not before this Court on this appeal.

## BACKGROUND

In the summary judgment context, a district court must consider the facts presented in the light most favorable to the non-moving party. *See* Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *see also McConaghy v. Sequa Corp.*, 294 F.Supp.2d 151, 153 (D.R.I.2003). Pursuant to that directive, the following are the undisputed facts, taken in the light most favorable to the non-moving party:

John T. Sheehan (hereinafter, "Sheehan") was appointed the Executor of the Estate of John T. O'Brien (hereinafter, "the Estate"). Mr. O'Brien passed away on January 20, 1999, and his will was

---

1. Case No. BK 01–13196, U.S. Bankruptcy Court for the District of Rhode Island.

2. Count III of the Trustee's Complaint, entitled "Fraudulent Conveyance," alleges that Newport Creamery paid $150,000 to Appellants without receiving a reasonably equivalent value in exchange for the transfer, and (1) the debtor was engaged in or about to engage in a business or a transaction for which remaining assets of the debtor were unreasonably small in relation to its business, and (2) the debtor intended to incur or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due. Complaint at ¶¶ 20–22.

probated in the Bristol, Rhode Island Probate Court, on February 2, 1999. The will provided that, after three bequests were paid, James T. Connell (hereinafter, "Connell") of Portsmouth, Rhode Island, would receive the residue of the Estate.[3]

Some time prior to March 8, 1999, Robert Swain (hereinafter, "Swain") approached Connell and requested a private loan. Connell agreed to grant him the loan in the amount of $100,000 and contacted Sheehan to have the money forwarded from his expected bequest. On March 5, 1999, a promissory note drafted by Sheehan, which is the focal point of this litigation, was executed by Swain, which provided: "Swain Development Corporation and Robert Swain, personally ... promise to pay to John Sheehan, Executor of the Estate of John T. O'Brien ... the sum of One Hundred Fifty Thousand ($150,000) Dollars." *See* Complaint, Exhibit A. In the note it is provided that $75,000 was to be payable in 14 days and $75,000 was to be payable in 90 days.

On March 8, 1999, three days after the execution of the note, Sheehan made a wire transfer in the amount of $100,000 from the Estate to Swain's account at Huntington National Bank in Clearwater, Florida. All exhibits, testimony, and memoranda submitted by the parties show that the amount transferred to Swain was $100,000, which is $50,000 less than the amount payable under the promissory note. Appellants do not contest these facts.

On or around March 12, 1999, Swain acquired The Newport Creamery, Inc. (hereinafter, "Newport Creamery") via his Florida-based, family-controlled, limited-liability corporation, Rocomi, LLC. Thereafter, he assumed the role of President of Newport Creamery. Acting in that capacity, Swain used funds of Newport Creamery to pay the full amount of the note. On September 27, 1999, approximately six months after Swain acquired Newport Creamery, Swain issued a $50,000 check from Newport Creamery to the Estate as a first installment on the loan. Seven months later, on April 26, 2000, Swain orchestrated the sale of property owned by Newport Creamery, located on Brown's Lane in Middletown, Rhode Island, to Rhumbline Partners,[4] a company partly owned by Sheehan and Connell and managed by Connell. The property was sold for the price of $300,000 with a credit in the amount of $100,000 given to the purchaser. This credit was deemed by the parties to have satisfied the balance due on the note.

No connection has been shown between the Estate and Rhumbline with regard to this credit. Also there is no direct evidence showing that the money was actually paid to the Estate by Rhumbline. However, bank records from the Estate indicate that two deposits were made to the Estate account. Combined, these deposits serve as the payment for the full balance due on the note. The first deposit was in the amount of $50,000, and it was immediately transferred to Larry Genovese to satisfy his bequest from the Estate. The second deposit was in the amount of $100,000, and it was divided with $25,000 going to Sheehan and $75,000 to Connell.

No other evidence has been presented to show that money was transferred to Swain, Swain Development Corporation, or Newport Creamery. All evidence and tes-

---

3. The three bequests were made to Stan Novak of Barrington, Rhode Island, Larry Genovese of Queens, New York, and Saint Luke's Church of Barrington, Rhode Island.

4. Rhumbline Partners was an original party to this suit in the bankruptcy court; however, summary judgment was not granted against this entity, so it is not a party to this appeal.

timony establish the following factual sequence: (1) Connell verbally agreed to grant Swain a loan of $100,000; (2) Sheehan drafted and Swain executed a promissory note in the amount of $150,000; (3) Swain received $100,000 from Estate funds; and (4) once Swain gained control of Newport Creamery, the repayment of the loan was satisfied with Newport Creamery funds in the amount of $150,000.

In a relatively short time, under Swain's stewardship, Newport Creamery became insolvent and filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Rhode Island on June 25, 2001. The case was converted into a Chapter 7 proceeding on September 11, 2001, and Richardson was appointed the Trustee of Newport Creamery. *See In re Bowker*, 245 B.R. 192, 195 (Bankr.D.N.J.2000); *see also* 11 U.S.C. § 704(1). On April 4, 2002, in fulfillment of his obligations as Trustee, Richardson filed this Complaint in the United States Bankruptcy Court for the District of Rhode Island to recover money damages against Sheehan and Connell.

On April 24, 2003, as part of a separate settlement agreement of claims made by the Trustee against Swain, Swain made the following assignment to the Trustee:

> [O]n his behalf and on behalf of Swain Development Corporation ... any and all claims he and Swain Development might have against the Estate of John O'Brien *or any other party* arising out of a promissory note executed by Robert Swain and Swain Development Corporation in the face amount of $150,000, dated March 5, 1999.

Trustee's Brief, Exhibit J (emphasis added).

Both sides agree that for purposes of this appeal there are no disputed issues of material fact. However, Appellants dispute that the Trustee was entitled to judgment as a matter of law on Counts I and IV of the Complaint.

The judgment entered in pertinent part provides as follows:

> 1. The Trustee's Motion for Summary Judgment as to Count I of the Complaint is granted, and judgment is entered jointly and severally against defendants John T. Sheehan, Jr., Executor of the Estate of John T. O'Brien and James T. Connell in the amount of One Hundred Fifty Thousand ($150,000.00) Dollars plus interest and costs;
>
> 2. The Trustee's Motion for Summary Judgment as to Count III of the Complaint is denied;
>
> 3. The Trustee's Motion for Summary Judgment as to Count IV of the Complaint is granted, and judgment is entered jointly and severally against defendants John T. Sheehan, Jr., Executor of the Estate of John T. O'Brien and James T. Connell in the amount of Four Hundred Fifty Thousand ($450,000.00) Dollars plus interest, costs and reasonable attorney's fees to be determined by the Court.

## JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158 this Court has jurisdiction over the instant appeal. Section 158(a) states in pertinent part:

> (a) The district courts of the United States *shall* have jurisdiction to hear appeals
>
> (1) from *final judgments, orders, and decrees;*
>
> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in Section 1121 of such title; and
>
> (3) *with leave of the court, from other interlocutory orders and decrees ...* of

bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title . . .

28 U.S.C. § 158 (2004) (emphasis added), *see also In re Ryan,* 282 B.R. 742, 747 (D.R.I.2002).

■ It is clear that "[o]n appeal from a decision of the Bankruptcy Court, this Court sits as an immediate appellate Court." *In re Ryan,* 282 B.R. at 747. Such appeals are taken in the same manner as appeals in federal civil proceedings. 28 U.S.C. § 158(c)(2); *see also In re Mayhew,* 223 B.R. 849, 854 (D.R.I.1998). On appeal from the decision of a bankruptcy court, the district court is not bound to remain within the confines of the bankruptcy court's reasoning, but is free to affirm the decision on any ground supported by the record. *In re Ryan,* 282 B.R. at 747. (citing *In re Erin Food Services, Inc.,* 980 F.2d 792, 801 (1st Cir. 1992)).

■ When reviewing a disposition of the bankruptcy court under 28 U.S.C. § 158(a), a district court may set aside factual findings only when they are clearly erroneous. Fed.R.Bankr.P. 8013; *see also In re Lopes,* 211 B.R. 443, 445 (D.R.I. 1997); *In re Anderson,* 128 B.R. 850, 852 (D.R.I.1991). However, when questions of law are appealed, *de novo* review is the appropriate standard. *In re Lopes,* 211 B.R. at 445. The Federal Rules of Bankruptcy Procedure state that Fed.R.Civ.P. 56 applies to adversary proceedings. *See* Fed.R.Bankr.P. 7056. Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Darr v. Muratore,* 8 F.3d 854, 859 (1st Cir.1993). "A

nonmovant, however, bears the burden of placing at least a single material fact into dispute after a moving party offers evidence of the absence of a genuine issue." *Darr,* 8 F.3d at 859. In this case, Appellants do not contest any of the facts that were educed in the Bankruptcy Court; therefore, this Court reviews the questions of law *de novo, In re Lopes,* 211 B.R. at 445.

■ While it is abundantly clear that this Court does have jurisdiction over the instant appeal, a close reading of the statute indicates that as a threshold matter, it must also be determined whether or not the order of the Bankruptcy Court is a final one and, in so doing, ascertain under which part of § 158 this appeal falls. While all parties, including the Bankruptcy Court itself have treated the order on appeal as a final judgment as to Counts I and IV, two issues remain outstanding which may call into question the order's finality. They are, (1) whether or not pre-judgment interest should be included in the judgment and, if so, in what amount, and; (2) whether or not attorneys' fees are payable to the Trustee and, if so, in what amount.

■ Despite these two as yet unresolved issues, this Court concludes that under § 158 the order is in fact final for purposes of appeal. Indeed, district courts, including many in this circuit have held that in bankruptcy proceedings, the finality of an order has a more flexible interpretation than in ordinary civil cases. *In re Murray,* 116 B.R. 6 (D.Mass.1990) (*citing to In re American Colonial Broadcasting Corp.,* 758 F.2d 794 (1st Cir.1985)); *In re Saco Local Development Corp.,* 711 F.2d 441, 444–46 (1st Cir.1983). *See also In re Chateaugay Corp.,* 880 F.2d 1509, 1511 (2d Cir.1989); *In re Johns–Manville Corp.,* 824 F.2d 176, 179 (2d Cir.1987). The First Circuit, along with other courts,

has held that in a bankruptcy proceeding, orders "may be immediately appealable if they finally dispose of discrete disputes within the larger case." *In re Saco*, 711 F.2d at 444. *See also In re Richmond*, 105 B.R. 14, 15 (D.Tex.1989) (Finding that order was "final" for purposes of appeal because it determined the substantive rights of the parties).

▮▮▮ While case law does indicate that this order may be treated as final for purposes of appeal, it is worthy of note that were its finality to be challenged (it has not), jurisdiction is still present under § 158(a)(3). In fact, pursuant to § 158 this court may review *any* order of the bankruptcy court, including "with leave of the court . . . interlocutory orders and decrees . . ." 28 U.S.C. § 158(a)(3). Thus, under the broad jurisdictional discretion provided by § 158, this Court may actually treat the notice of appeal, filed with the bankruptcy court, as an application for leave to appeal. *In re Johns–Manville Corp.*, 32 B.R. 728, 731 (S.D.N.Y.1983). The statute provides the Court with discretion in reviewing an interlocutory appeal whether or not it is considered final for purposes of appeal in other instances. *In re Richmond*, 105 B.R. at 15. Jurisdiction, thus, having been settled, this Court turns now to the substance of the appeal.

## DISCUSSION

▮▮▮ Rhode Island law declares that interest charged on a loan at a rate higher that twenty one (21%) percent per annum is usurious and void and a borrower can recover any amounts paid on the loan. R.I. Gen. Laws § 6–26–2(a) (2000). In this case, the evidence establishes that a promissory note was executed for the amount of $150,000; however, only $100,000 was transferred to Swain as a loan. The Bankruptcy Court correctly concluded that the difference of $50,000 was interest charged

on the loan. According to the Trustee, the repayment schedule contemplated by the promissory note would have resulted in an interest rate on the loan of 406 percent. Trustee's Brief at 5; Transcript at 3. Using the repayment schedule utilized by Swain, the interest on the note was actually 49 percent. Trustee's Brief at 4; Transcript at 3.

▮▮▮ It is clear under Rhode Island law that all loan contracts that violate state interest laws, *see* R.I. Gen. Laws § 6–26–2(a)(2000), are usurious and void. R.I. Gen. Laws § 6–26–4 (1995). Under Rhode Island law, if it is shown that Appellants acted in concert in (1) making the loan, (2) demanding payment on the loan, and (3) achieving receipt of funds in excess of the 21 percent maximum interest rate, a case of usury has been made out against them. *State v. Sepe*, 122 R.I. 560, 570, 410 A.2d 127, 133 (1980). In addition to the state usury statute, the Rhode Island RICO statute makes it illegal to collect "unlawful debt." R.I. Gen. Laws § 7–15–1(d) (1985). The statute defines "unlawful debt" as debt incurred or contracted for which is unenforceable under state law in whole or part as to principal or interest because of the law relating to usury. *Id.* at § 7–15–1(d).

As previously noted, Appellants do not contest the facts on this appeal, nor do they contend that the Trustee has failed to prove all the elements of the usury claim or state RICO claim. Instead, they offer four separate arguments as to why the Bankruptcy Judge's decision granting summary judgment on Counts I and IV should be reversed.

First, Appellants assert that the Trustee's usury claim is barred by the state statute of repose because it was brought against the Estate after the Estate was distributed. *See* R.I. Gen. Laws § 33–11–5 (1956). Second, Appellants argue that

since the promissory note discussed above was signed by Swain, the Trustee cannot establish a debtor/creditor relationship between Newport Creamery and Appellants and thus, cannot recover against them. Third, Appellants argue that Swain's complicity in the usurious transaction undermines his ability to bring suit, and, as a result, prevents the Trustee from maintaining this cause of action in his stead. Finally, Appellants argue that the Bankruptcy Judge's reasoning in denying summary judgment as to Count III, on the Trustee's claim for fraudulent conveyance, applies with equal force to the Trustee's usury and state RICO claims, and thus should bar summary judgment on those Counts. This Court shall address each of these four assignments of error individually.

## I. The State Statute of Repose

■ Appellants argue that the Bankruptcy Court erred in entering summary judgment against Sheehan because Sheehan is being sued in his representative capacity as Executor of the Estate. The Rhode Island statute of repose provides that all claims against an estate must be filed before that estate is distributed. R.I. Gen. Laws § 33–11–5 (1956). In this case, the Estate was distributed on January 15, 2002, and, the Trustee did not file his Complaint until April, 2002. Further, Appellants argue that Sheehan's representative capacity was terminated at the time the Estate was distributed. As a result, according to the Appellants, Sheehan was no longer the Executor of the Estate of John T. O'Brien, when the Complaint was filed. Therefore, Appellants argue that the Bankruptcy Court erred in granting summary judgment against Sheehan as Executor of the Estate.

The argument that Appellants make regarding the statute of repose can only succeed if the claim was brought against Sheehan in his representative capacity. If the Complaint was filed against Sheehan in his representative capacity (really against the Estate), Appellants are correct that the Trustee would not be able to maintain the suit because the Estate had been closed prior to the Trustee filing the case. However, if the Complaint was filed against Sheehan in his individual capacity, the state statute of repose would be inapplicable. In his brief, the Trustee argues that the instant claim is not brought against Sheehan in his representative capacity as Executor, but rather against Sheehan in his *individual capacity* for harm resulting from his actions *while serving as Executor of the Estate.* *See* Trustee's Brief at 8 ("The fact that an estate is closed does not prevent an entity harmed by the actions of its executor from suing the executor for those actions.") Therefore, this Court must determine in what capacity Sheehan was sued in this case.

■ In order to resolve this question, this Court must evaluate the Complaint as a whole. *Colorado Springs Cablevision, Inc. v. W.A. Lively,* 579 F.Supp. 252, 255 (D.Colo.1984); *see also Babb v. Paul Revere Life Ins. Co.,* 102 F.Supp. 247, 251 (W.D.S.C.1952) (stating that a complaint should always be evaluated as a whole rather than piecemeal). Rhode Island courts apply the same standard. *Procaccianti v. Procaccianti,* 76 R.I. 305, 312, 69 A.2d 635, 639 (1949) (holding that under Rhode Island law courts must look to both the summons and the body of the complaint to determine the capacity in which the parties are sued). Thus, this writer must look at the Complaint as a whole in order to determine whether Sheehan was sued in his individual or representative capacity.

■ When reviewing the Complaint, this Court also recognizes that Fed.

R.Civ.P. 10(c) applies to adversary bankruptcy proceedings. Fed.R.Bankr.P. 7010. Rule 10(c) of the Federal Rules of Civil Procedure provides that a copy of any written instrument which is attached as an exhibit to a pleading is incorporated as a part thereof for all purposes. Fed. R.Civ.P. 10(c). The same rule applies under Rhode Island law. *See* R.I.Super.R.Civ.P. 10(c); *Bowen Court Associates v. Ernst & Young, LLP,* 818 A.2d 721, 726 (R.I.2003). In this case, the Trustee attached a copy of the promissory note to the Complaint, and referred to it specifically therein. *See* Complaint at ¶ 7; *see also* Exhibit A. Because the promissory note was attached to the Complaint, it was made part thereof, and this Court must consider it in determining this issue.[5] Taking these principles into consideration, this Court will analyze the various parts of the Complaint.

## A. Caption

 The caption of the Complaint names "JOHN T. SHEEHAN, Executor of the Estate of John O'Brien." The word "as" was not used. The wording of this caption was taken verbatim from the promissory note, which was executed by Swain under Rhode Island law. Standing alone, this caption merely recites that Sheehan was Executor of the Estate, and does not include language indicating that Sheehan was sued in his representative capacity. *See Stratton v. City of Boston,*

731 F.Supp. 42, 45 (D.Mass.1989) (stating that a claim made against a defendant identified in the caption both by name and by an official title, set off only by commas, is ambiguous as to the capacity in which the defendant is sued). However, pursuant to Fed.R.Civ.P. 9(a), which applies to adversary bankruptcy proceedings, *see* Fed.R.Bankr.P. 7009, representative capacity need not be specifically pleaded in the case caption for a party to be sued in his or her representative capacity.[6] When the caption is ambiguous as to the capacity in which a party is sued, the court must evaluate the body of the complaint and the claims asserted to determine capacity. *See Colorado Springs Cablevision,* 579 F.Supp. at 255; *see also Chute v. City of Cambridge,* 201 F.R.D. 27, 32 (D.Mass. 2001) (scrutinizing body of complaint in a case brought under 42 U.S.C. § 1983 to determine whether the defendants were sued in their individual or official capacities). As a result, this writer must consider the remainder of the Trustee's Complaint.

## B. Body

In its evaluation of the body of the Complaint, this Court recognizes that the Complaint's factual allegations make reference, in at least one place, to Sheehan's actions in his representative capacity as Executor of the Estate. Paragraph 7 of the Complaint states that Sheehan, in his capacity

---

5. The Trustee also attached to his Complaint a copy of a check from Newport Creamery to the Estate in the amount of $50,000, representing the first payment on the loan. *See* Complaint at ¶ 11 and Exhibit C. Thus, this instrument is also incorporated into the Trustee's Complaint. The check is made out to the Estate alone, and does not name Sheehan in any capacity. *See* Complaint, Exhibit C. As a result, it does not assist the Court in determining in what capacity Sheehan was sued.

6. In federal courts, capacity need not be alleged by a party in a pleading unless it is relevant to the determination of jurisdiction. Fed.R.Civ.P. 9(a); Wright & Miller, Federal Practice and Procedure: Civil 2d § 1292 (1990). While 9(a) allows a party to omit from the caption, the capacity in which a person is sued, courts have held that if a plaintiff alleges a capacity, that averment must be correct. *Castleglen, Inc. v. Commonwealth Savings Assoc.,* 118 F.R.D. 515, 517 (D.Utah 1988).

as Executor of the Estate, loaned $100,000 to Swain and Swain Development Corporation. Complaint at ¶ 7. However, this Court concludes that this factual allegation describes only where the money for the loan originated and not necessarily the capacity in which Sheehan is being sued. It is uncontested that Sheehan actually ordered the transfer of money from the Estate to Swain in his capacity as Executor. However, it is clear that Sheehan was acting as Connell's agent in doing so. As the Trustee argues, the fact that Sheehan used Estate funds does not prevent the Trustee from suing Sheehan individually for damages for his wrongdoing. Although the Complaint alleges that Sheehan used his position as Executor to fund the loan to Swain, the Complaint also cites and attaches the promissory note, describing the note throughout the Complaint as the vehicle giving rise to the claims against Appellants. *See* Complaint at ¶¶ 7, 9, 13, 15, and Exhibit A. Consequently, the Court must now focus on the promissory note because it is deemed to be part of the Complaint. *See* Fed.R.Civ.P. 10(c).

## C. Exhibit A, the Promissory Note

The promissory note was drafted by Sheehan. He is the architect of this fiasco. He structured this transaction as a usurious loan. Not only did he commit a civil wrong, he committed a crime as well. Clearly, he is personally liable for violating the usury laws. He made the promissory note payable to "John Sheehan, Executor of the Estate of John T. O'Brien". He didn't use the word "as" so the Estate is not the payee of the note. The Rhode Island Supreme Court has held that an executor, who endorses a promissory note in his own name and adds to it the words "as executor", is to be held personally liable because he has no authority to bind the persons for whom or for whose benefit, or for whose estate, he is acting. *Roger*

*Williams Nat. Bank v. Groton Mfg. Co.,* 16 R.I. 504, 506–07, 17 A. 170, 170–71 (1889); *see also Taylor v. Davis,* 110 U.S. 330, 337, 4 S.Ct. 147, 28 L.Ed. 163 (1884). The mere use of his title in the note will not discharge him. *Id.* The Rhode Island Supreme Court has also held that if a note is payable to an individual with a description of his official character attached to his name, then the added words shall be regarded as *discriptio personae,* and the individual is the payee. *Nat'l Bank of Commerce v. McLaughlin,* 50 R.I. 60, 62, 145 A. 16, 17 (1929). Thus, under Rhode Island law, Sheehan's failure to include the Estate as the payee of the note, whether intentional or otherwise, makes him the payee and personally liable for any wrongful conduct arising out of the transaction.

In short, the Trustee had no claim against the Estate. He surely had a claim against Sheehan personally and against Connell because Connell was Sheehan's principal and participated in and ratified this transaction.

Therefore, it is obvious to this Court that Sheehan was sued in his individual capacity and the statute of repose has no application to this case. Consequently, this Court concludes that Appellants' argument regarding the statute of repose is meritless.

## II. The Debtor/Creditor Relationship

█ Here, Appellants argue that there is no debtor/creditor relationship between Newport Creamery and Appellants and, therefore, this suit cannot be maintained by the Trustee against them. When the promissory note was executed, Swain signed the note on his own behalf and on behalf of Swain Development Corporation. At that time, neither Swain, nor Swain Development Corporation, had an interest in Newport Creamery. Swain was merely

in negotiations for the purchase. It is clear that Newport Creamery was not the recipient of the loan and was not liable on the promissory note. Therefore, Appellants argue that since no debtor/creditor relationship existed between Appellants and Newport Creamery, the Trustee could not maintain an action for usury, and without usury, the Trustee could not maintain an action for state RICO violations.

This argument has no merit because it ignores the assignment executed by Swain as a part of his settlement with the Trustee. That assignment establishes the basis for a suit by Newport Creamery and the Trustee since Newport Creamery funds were used to pay off the loan. When Swain assigned to the Trustee any and all claims that Swain or Swain Development Corporation had in order to settle the Trustee's claims against him for his wrongdoing, the right to sue became part of the bankruptcy estate of Newport Creamery. *See* 11 U.S.C. § 541(a). Therefore, the Trustee had the right and the duty to pursue these usury and RICO claims against Sheehan and Connell as the perpetrators of this usurious transaction.

## III. The Underlying Debtor's Ability to Bring Suit

Appellants rely on a U.S. Supreme Court case which holds that a trustee in bankruptcy cannot maintain an action against a third party that could not have been maintained by the debtor. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 432 n. 22, 434, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). Appellants argue that Swain had no grounds to sue at the time the case was commenced because he never claimed that the loan was usurious. Appellants also assert that Swain waived his right to a claim of usury. Alternatively, as an added argument made both in their brief and at the hearing before the Bank-

ruptcy Court, Appellants content that the Trustee "conveniently but conversely" attempted to distance Newport Creamery from Swain for fear that Swain would be considered a co-conspirator, and furthermore, if Swain was a co-conspirator, then the liability of Appellants should be limited. *See* Appellants' Brief at 16; *see also In re Hunt*, 149 B.R. 96, 101 (Bankr. N.D.Tex.1992). The Court will now address these contentions.

### A. Grounds to File Suit

This Court concludes that both the usury and RICO counts at issue were properly before the Bankruptcy Court. The original debtor was Swain. Swain could have maintained an action against Sheehan and Connell under usury and state RICO statutes; but, he chose not to sue. Instead, Swain opted to use his claim against Appellants as a bargaining tool for the settlement of the claims being made against him by the Trustee. *See* Trustee's Brief, Exhibit J; *see also* text *supra.*

■ After Swain made the assignment, the choice of whether or not to file suit belonged to the Trustee. Title 11, section 541(a)(7) of the Bankruptcy Code states that after the voluntary filing of a bankruptcy petition, which commences a case and creates an estate, all "property of the estate" includes any interest in property which the estate acquires thereinafter. 11 U.S.C § 541(a)(7). The right to bring suit is an assignable form of property recognized under Rhode Island law. *See* R.I. Gen. Laws § 9–2–8 (1956) (stating that the assignee of a "nonnegotiable chose in action" has the ability under Rhode Island law to bring suit in his or her own name, subject to all defenses raisable against the assignor); *New Bedford Inst. for Savings v. Calcagni*, 676 A.2d 318, 320 (R.I.1996) (reciting the "long settled" practice that the assignee of a nonnegotiable chose in

action may bring suit in the assignor's shoes if the assignment is in writing); Black's Law Dictionary 241 (6th ed.1990) (defining "chose in action" as a "right of bringing an action" or a "[r]ight of proceeding in a court of law to procure payment of a sum of money"). Therefore, once the right to sue was absolutely and irrevocably assigned to the Trustee, the right to sue on these claims became part of the Newport Creamery estate. 11 U.S.C. § 541(a)(7). This nullifies Appellants' argument that the Trustee cannot sue a third party. The Trustee has established that he has the right to sue Appellants on Newport Creamery's behalf.

■ Appellants also argue that the Trustee has no grounds for filing suit as Swain waived his right to a claim of usury. In support of this proposition, Appellants cite *Boyajian v. DeFusco (In re Giorgio)*, wherein then Chief Judge Francis J. Boyle, referring to an Oklahoma case, stated: "In our opinion, however, waiver of a usury defense should be permitted when it is freely and knowingly made after reasoned reflection for the legitimate purpose of avoiding or settling litigation." *Boyajian v. DeFusco (In re Giorgio)*, 81 B.R. 766, 770 (D.R.I.1988) (*citing Shoenfelt v. Donna Belle Loan and Investment Co.*, 172 Okla. 346, 348, 45 P.2d 507, 509–510 (1935); *Siegal v. Lechler*, 130 Colo. 338, 342–343, 275 P.2d 949, 951 (Colo.1954); *Gunn Plumbing, Inc. v. Dania Bank*, 252 So.2d 1, 4 (Fla.1971)). Judge Boyle's statement, when taken in context, is inapplicable to the facts of this case. The quote was made in reference to the plaintiffs in that case, who had raised a claim of usury in a previous suit and had entered into a consent judgment with the defendants in the context of that case releasing any potential claim of usury against the defendants. After the plaintiffs defaulted on their payments and went into bankrupt-

cy, they filed a new case, moving to vacate the consent judgment. *Giorgio*, 81 B.R. at 767–70. In *Giorgio*, Judge Boyle concluded that the usury claim was part of the consent agreement reached in the previous case and thus could not be reasserted. *Id.* at 770. Here, Swain settled with the Trustee but never settled the usury claim with Appellants. Instead he assigned it to the Trustee who can now assert it against Sheehan and Connell.

■ In any event, Appellants have failed to establish that Swain waived his claim of usury both knowingly and voluntarily. Waiver is the intentional and voluntary relinquishment of a known legal right. *Doyle v. Huntress, Inc.*, 301 F.Supp.2d 135, 149 (D.R.I.2004); *Harvard Pilgrim Health Care of New England v. Thompson*, 318 F.Supp.2d 1, 11 (D.R.I. 2004). Here, Swain assigned his legal right to sue to the Trustee. There is not a shred of evidence that Swain intentionally or voluntarily gave up his right to sue Appellants. Appellants have failed to establish the required elements of a waiver and have failed to demonstrate how Judge Boyle's statement in *Giorgio*, which was taken out of context, has any applicability to this case. Therefore, this Court rejects Appellants' argument.

B. Distancing Newport Creamery from Swain

■ Now the Court turns to Appellants' argument that the Trustee is attempting to distance Swain from Newport Creamery. This argument is based on the notion that Swain is a collaborator in constructing this high interest loan arrangement, and thus, cannot benefit from the receipt of these funds and then claim to be a victim of usury. It is apparent to this Court that Appellants are arguing an *in pari delicto* defense without saying it in so many words. The *in pari delicto* doctrine

is that a plaintiff, who has participated in the wrongdoing, may not recover damages resulting from the wrongdoing. Black's Law Dictionary 794 (7th ed.1999). It is well established under Rhode Island law that when a plaintiff is *in pari delicto*, the law will not aid either party, but instead it leaves the parties where it finds them. *Sullivan v. Hergan*, 17 R.I. 109, 110, 20 A. 232, 233 (1890). The law will not aid a person in attaining a remedy for doing what the law says shall not be done. *Birkett v. Chatterton*, 13 R.I. 299, 303 (1881).

■■■ However, the Rhode Island Supreme Court has also held that the action of the plaintiff must be directly prohibited by statute in order for the *in pari delicto* doctrine to apply. *Guay Bros. v. Gauvreau*, 47 R.I. 400, 401–02, 133 A. 797, 798 (1926) (where a landlord moved to eject a tenant who was illegally selling alcohol out of a garage, and the Court found that the landlord was not *in pari delicto* even though his employees, who were acting under his orders, had bought alcohol from the tenant, because the statute that was violated only made it illegal to sell alcohol out of the garage); *Grande v. Eagle Brewing Co.*, 44 R.I. 424, 428, 117 A. 640, 642 (1922) (where there was an illegal contract for the sale of a liquor license and the buyer sued to recover the cost of the license, the Court held that the *in pari delicto* doctrine did not apply as it was only unlawful to sell a liquor license, not to buy one); *Birkett* 13 R.I. at 301–03 (where a father was not allowed to recover money owed to his 11 year old son because of the *in pari delicto* doctrine, because the statute prohibited the employment of minors in manufacturing establishments). In the state usury and RICO statutes, there is no mention of the *in pari delicto* doctrine, nor is there mention of a similar defense. Notably as well, there are no other statutes in Rhode Island that bar the payment of an illegal interest rate. Here, the statutes in question only bar the lender from reserving, charging or taking illegal interest on a loan, R.I. Gen. Laws § 6–26–2(a) (2000), or the collection of unlawful debt, R.I. Gen. Laws § 7–15–2(a) (1979). In this case, Swain cannot be found to have participated in any wrongdoing in borrowing money at a usurious interest rate because his actions were not expressly prohibited by any statutes. Therefore, Swain could, in fact, have actually benefitted from the receipt of the loan money and still claim to be a victim under the state usury and RICO statutes.

1. Usury Claim

■■■ Even if Swain knew that the interest was high at the time he accepted the loan, Rhode Island usury law places the burden of charging a legal interest rate on the lender:

> *[N]o person,* partnership, association, or corporation *loaning money to or negotiating the loan of money for another* ... *shall,* directly or indirectly, *reserve, charge, or take interest on a loan,* whether before or after maturity, at a rate which shall exceed ... twenty-one percent (21%) per annum....

R.I. Gen. Laws § 6–26–2 (2000) (emphasis added).

■■■ The statute explicitly states that all borrowers will be able to recover the amount involved, even if payment has already been made on the loan. R.I. Gen. Laws § 6–26–4(a) (1995). In addition, under Rhode Island contract law there must be an offer, acceptance and consideration in order to have a legal contract. *Filippi v. Filippi*, 818 A.2d 608, 623–24 (R.I.2003). Usury is a contract claim under which there must be: (1) a contract entered into; and, (2) the reservation, charging or taking of excessive interest. R.I. Gen. Laws § 6–26–2 (2000); § 6–26–4 (1995). Hence,

there can never be a violation of the usury laws without either party knowing of and bargaining for, or, in other words, contracting for, the terms, including high interest. Despite mutual assent to the terms, Rhode Island statutes do not punish the borrower. Instead, the Rhode Island statutes provide a remedy even after part or all of the loan has been paid. Here, Swain cannot be found *in pari delicto* with Appellants because Swain never reserved, charged or took any interest; therefore, even though he knew about the terms, he never participated in any wrongdoing that was prohibited by statute.

### 2. State RICO Claim

The Trustee's RICO claim is derived from the usury claim. The RICO statute prohibits the collection of unlawful debt. R.I. Gen. Laws § 7–15–2(a) (1979). As defined by Rhode Island law, "unlawful debt" is debt incurred or contracted for which is unenforceable under state law, in whole or in part, as to principal or interest, because of the law relating to usury. R.I. Gen. Laws § 7–15–1(d) (1985). Again, Appellants argue that Swain knew what the terms of the contract were when he accepted them, and therefore, should not be allowed to benefit from the receipt of the funds and then claim to be a victim.

In 1996, while examining both the federal civil RICO statute, 18 U.S.C. § 1964(a), and the state RICO statute at issue, the First Circuit observed that the question of whether or not an "innocent party" requirement exists in order for standing to be established for a RICO claim was a question of first impression in the circuit. *Roma Construction Co. v. aRusso,* 96 F.3d 566, 570 (1st Cir.1996). Under the wording of the state RICO statute, the federal RICO statute, and pertinent legislative history, the Court could find no requirement that a plaintiff had to be an "innocent

victim." *Id.* at 570–74. The Court, however, did not have to rule on this issue because the plaintiff did show nonculpability under all potentially applicable statutes. *Id.* at 572 (assuming, without concluding, that civil RICO standing is limited to innocent parties); *see also id.* at 570 n. 2 (cautioning that in its analysis the Court did not intend to imply an *in pari delicto* defense was applicable to civil RICO claims). The Court did assume that where RICO statutes provide a civil remedy, claims should only be denied if statutes and case law prohibit recovery, not on general policy grounds. *Id.* at 571. Also, if RICO standing was limited to "innocent parties", the question of a party's innocence must be resolved via the incorporation of state law into federal law. *Id.* at 572.

■ Therefore, in order for the *in pari delicto* doctrine to apply to the RICO count, Swain would need to have been involved with the wrongdoing, which, under the state RICO statute, was the collection of unlawful debt. Like the plaintiff in the First Circuit case, Swain can show that he is nonculpable under all potential statutes. As noted previously, the Rhode Island usury statute places the burden of reserving, charging, or taking of a legal interest rate on the lender. The Rhode Island RICO statute alters this burden slightly, as it places the burden of the legal interest rate on the collector. The Rhode Island RICO law statute states:

> It is unlawful for any person who has knowingly *received any income* derived directly or indirectly ... *through the collection of unlawful debt,* to directly or indirectly use or invest any part of that income, or the proceeds of that income in the acquisition of an interest in, or the establishment or operation of any enterprise.

R.I. Gen. Laws 7–15–2(a) (1979) (emphasis added).

The state RICO statute is clear that it is the collection of unlawful debt that is illegal, yet, it does not state that it is illegal to pay unlawful debt. Here, Swain cannot be found to be *in pari delicto* with Appellants because Swain did not collect any unlawful debt, and thus did not participate in any usurious wrongdoing.

 Appellants' argument that the Trustee has no standing to file suit fails, as standing was created when the assignment was executed to the Trustee. Rhode Island usury and RICO laws are meant to protect victims of a usurious loan, as remedies are available to all borrowers. R.I. Gen. Laws § 6–26–4(a) (1995). Whether the debtor had knowledge that the interest rate was excessive is irrelevant under state law, as the contract can be created and paid, yet recovery is still permitted. *Id.* This state burdens only the lender and the collector, both of whom are often the creators of the terms and conditions of the loan, to not violate state interest laws. R.I. Gen. Laws § 6–26–2 (2000); § 7–15–2 (1979). Therefore, the Bankruptcy Judge was correct in concluding that the Trustee could recover the $150,000 paid by Swain with Newport Creamery funds to Sheehan and Connell and treble damages of $450,000 against them for violation of the state RICO statute.

IV. The Bankruptcy Judge's Reasons for Denying Summary Judgment as to the Fraudulent Conveyance claim

In their brief, Appellants cite a statement made by Judge Votolato when he denied the Trustee's motion for summary judgment on the fraudulent conveyance claim (Count III):

> But for summary judgment reasons, or for the basis for summary judgment, I think the Court needs and

requires a very high comfort level to assess or to make a ruling on an issue at this juncture. I just don't have it in this case.

Transcript at 20.

Appellants argue that Judge Votolato's rulings granting summary judgment on the usury and state RICO claims, but denying summary judgment on the fraudulent conveyance claims are inconsistent and thus should be reversed. This is an argument made out of desperation.

Appellants have quoted Judge Votolato out of context. In the statement quoted above, Judge Votolato was discussing the evidence set forth to prove the insolvency of Newport Creamery with relation to the fraudulent conveyance count. Transcript at 20. The elements necessary to prove a fraudulent conveyance are not the same as for a RICO or usury claim. The Trustee had to show that when the conveyance of $150,000 was made to Sheehan and Connell that made Newport Creamery insolvent. The Bankruptcy Judge concluded that the Trustee had not made that showing. Clearly, the Trustee made a showing that the loan made and collected by Sheehan and Connell was in violation of the usury and civil RICO statutes. The Bankruptcy Judge's denial of the Motion for Summary Judgement on Count III, is therefore, irrelevant to his ruling on the other counts.

## CONCLUSION

For the reasons expressed above, the Bankruptcy Court's entry of judgment against Sheehan and Connell, jointly and severally, in the amount of $150,000 for usury on Count I, and in the amount of $450,000 for state RICO violations on Count IV, is affirmed. Since the Trustee's claims asserted in Counts II and III of the Complaint have not been resolved, and the

issues of pre-judgment interest and counsel fees on Counts I and IV remain outstanding, this matter must be remanded to the Bankruptcy Court for further proceedings so that a truly final judgment can be entered and an end result achieved in this litigation.

It is so ordered.