**In re AGRIBIOTECH, INC. Debtor.**

**Anthony H.N. Schnelling, as Trustee of the AgriBioTech Creditors' Trust, the Duly Appointed and Authorized Representative of the Chapter 11 Estates of AgriBiotech, Inc., Las Vegas Fertilizer Co., Inc., Garden West Distributors, Inc., and Geo. W. Hill & Co., Inc., Plaintiff,**

v.

**Johnny R. Thomas; John C. Francis; Scott J. Loomis; James W. Hopkins; Kent Schultze; Richard P. Budd; Randy Ingram; Thomas B. Rice; Drew Kinder; James W. Johnston; L. Glenn Orr; Harrison M. Baines, Jr.; Kathleen L. Gillespie; Henry Ingalls; Doug Fisher; Kenneth Budd; KPMG Peat Marwick LLP, a limited liability partnership; KPMG Consulting, Inc., a Delaware corporation; Snow Becker Krauss, P.C., a professional corporation; Elliot Lutzker; Womble Carlyle Sandridge & Rice, PLLC, a professional limited liability company, Defendants.**

Civ. No. CV–S–0537–PMP (LRL).
Bankruptcy No. BK–S–00–10533–LBR.
Adversary No. 02–1023–LBR.

United States District Court,
D. Nevada.

Dec. 8, 2004.

Candace C. Carlyon, Shea & Carlyon, Las Vegas, NV, David Bryant, Scott M. DeWolf, Diamond, McCarthy, Taylor, Finley, Bryant & Lee, LLP, Jay Madrid, Winstead, Sechrest & Minick, Dallas, TX, for Anthony H.N. Schnelling, trustee.

Richard F. Holley, Victoria L. Nelson, Santoro, Driggs, Walch, Kearney, Johnson & Thompson, Las Vegas, NV, William K. Davis, Alan M. Ruley, Bell, Davis & Pitt, Winston–Salem, NC, for Defendant Richard P. Budd.

## ORDER

PRO, Chief Judge.

Presently before the Court is Defendant Richard P. Budd's Motion for Reconsideration and Memorandum of Points and Authorities in Support CV–S–02–0885 (Doc. # 685) filed on July 20, 2004. Plaintiff Anthony H.N. Schnelling filed Plaintiff's Response to Richard P. Budd's Motion for Reconsideration (Doc. # 724) on August 30, 2004. Defendant Richard P. Budd ("Budd") filed his Reply (Doc. # 749) on September 30, 2004.

## I. BACKGROUND

AgriBioTech, Inc. ("AgriBioTech" or "ABT") originally was founded in 1983. (Third Amended Compl. (Doc. # 328) ¶ 51.) As of 1998, AgriBioTech was the largest forage and turfgrass seed producer in the United States. (*Id.* ¶ 1.) "On January 25, 2000, ABT and three of its subsid-

iaries, L[as] V[egas] F[ertilizer Co.], Garden West [Distributors,] and [Geo. W.] Hill [& Co., Inc.] (collectively, the 'Debtors') commenced jointly administered Chapter 11 cases by filing voluntary petitions under Chapter 11 of the United States Bankruptcy Code ...." (*Id.* ¶ 12.) The Debtors created a Creditors' Trust pursuant to the First Amended Joint Plan of Reorganization ("Reorganization Plan" or "Plan"), which United States Bankruptcy Judge Linda B. Riegle confirmed. (*Id.;* Trustee's Resp. to KPMG LLP's Mot. for Summ. J. on All Claims Purportedly Brought by Trustee on Behalf of Non-Debtor Third Parties, Ex. B.)

Plaintiff Anthony H.N. Schnelling ("Trustee"), as Trustee of the AgriBioTech Creditors' Trust, brought this lawsuit against former AgriBioTech officers and directors based on the rights allegedly assigned him pursuant to the Plan. (First Am. Compl. (Doc. # 438) ¶ 1, 7.) The Trustee brought claims for fraud and negligent misrepresentation against, among other defendants, Defendant Budd.[1] (*Id.* ¶¶ 2, 8, 34–58.) The Trustee brought these claims as "assignee of the claims of forage and turfgrass seed farmers (the 'Growers')." (*Id.* at 2.) According to the Complaint, the Reorganization Plan assigned to the Trustee the Growers' claims that Budd knowingly misrepresented to the Growers ABT's financial state in the summer and fall of 1999 to induce the Growers to deliver to ABT their seed crop. (*Id.* ¶¶ 7, 34–48.)

On July 31, 2002, Defendant Budd filed a Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) (Doc. # 18 in CV–S–02–0885). Budd argued the Trustee lacked standing to assert the fraud claims on behalf of the Growers because section 2.3 of the Plan states that the Plan is to be construed pursuant to Nevada law, and Nevada prohibits the assignment of fraud claims. This Court denied Budd's motion and ruled the Trustee had standing to pursue the Growers' fraud claims. Budd now moves the Court to reconsider this prior ruling.

Additionally, Budd argues that even if the Trustee has standing under the Plan, as a matter of law the Trustee has no standing to pursue third party or creditor claims not belonging to the Debtor at the commencement of the bankruptcy proceedings. The Trustee argues that the Trustee has standing to pursue the Growers' fraud claims because the claims upon assignment belong to the Debtors' estates and any recovery will be distributed according to the priorities set forth in the Reorganization Plan.

## II. STANDING UNDER THE PLAN

Reconsideration of a prior ruling is appropriate only in limited circumstances, such as the discovery of new evidence, an intervening change in controlling law, or where the initial decision was clearly erroneous or manifestly unjust. *Nunes v. Ashcroft,* 375 F.3d 805, 807–08 (9th Cir. 2004). A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled. *Brogdon v. Nat'l Healthcare Corp.,* 103 F.Supp.2d 1322, 1338 (N.D.Ga.2000).

Section 2.3 of the Reorganization Plan contains a choice of law provision which provides that the Plan is to be construed according to Nevada law in the same way and to the same extent as a written contract would be construed ac-

---

1. Pursuant to a settlement agreement, only the fraud claims against Richard Budd remain in the Growers action. (Settlement Agreement filed under seal at 10.)

cording to Nevada law.[2] (*See* Order (Doc. # 326) dated Dec. 24, 2002 at 7–8.) Nevada law prohibits the assignment of fraud and negligent misrepresentation claims. (*Id.* at 8 (citing *Prosky v. Clark*, 32 Nev. 441, 109 P. 793, 794 (1910))). Consequently, based on section 2.3 alone, the assignment of the Growers' fraud claims to the Trustee would appear to be void under Nevada law.

However, as this Court previously ruled, other language in the Plan reserves to the Trustee the right to pursue fraud claims. Section 10.4 states that "[u]nless Litigation is expressly waived, relinquished, released, compromised or settled in this Plan or in a Final Order, all rights with respect to such Litigation are reserved and assigned to the Creditor Trust and the Creditor Trustee may pursue such Litigation." (Reorganization Plan § 10.4.) The Plan defines "Litigation" to mean:

> [a]ny and all claims, debts, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever ... of the Debtors or their Estates, *including but not limited to ... such claims* and defenses *as fraud*, mistake, duress and usury ....

(Reorganization Plan § 1.71 (emphasis added).) The Court previously resolved this internal inconsistency in the Plan by ruling that the specific provisions in sections 1.71 and 10.4 authorizing the Trustee

to pursue a suit for fraud should govern over section 2.3's general choice of law provision. (*Id.* at 8–9.) The Court therefore concluded the Trustee had standing under the Plan to pursue the Growers' fraud claims.

Budd now contends the Court erroneously concluded that 1.71 and 10.4 were the specific provisions governing the Growers' fraud claims. Budd's argument centers on section 1.72 of the Plan, which defines "Litigation Claims" in part as "any claims against the Debtors, or its former professionals, officers, or directors." (Reorganization Plan § 1.72.) Budd contends that because section 1.72 specifically refers to claims against ABT's former officers and directors, it is the specific provision governing the Growers' fraud claims against Budd rather than sections 1.71 or 10.4 as this Court previously ruled. Budd further argues that section 1.72 makes claims against ABT's former officers and directors "subject to the terms of this Plan," including section 2.3's choice of law provision. Budd contends that section 1.71's definition of "Litigation" refers to claims "of the Debtors or their Estates," and the fraud claims are the Growers' claims, not claims of ABT or its estate. Budd therefore argues that section 1.72 is the specific governing provision, and under that provision claims against ABT's former officers or directors are subject to section 2.3's choice of law provision requiring the application of Nevada law, which prohibits the assignment of fraud claims.

2. Section 2.3 states:

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or Local Rules are applicable, and subject to the provisions of any contract, note, security agreement, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with,

the laws of the State of Nevada without giving effect to the principles of conflict of laws thereof to the same extent that a valid and binding contract to be governed by, construed, and enforced in accordance with the laws of the State of Nevada without giving effect to the principles of conflict of laws thereof would be so governed, construed, and enforced.

(Reorganization Plan § 2.3.)

Even accepting Budd's argument that section 1.72 is the specific provision governing the fraud claims in this action, nothing in section 1.72 alters the Court's conclusion that the Plan's specific terms reserve to the Trustee all claims, including fraud claims, unless expressly waived and that these specific provisions override section 2.3's general invocation of Nevada law. Section 1.72 defines Litigation Claims as follows:

> 1.72 "Litigation Claims." Litigation Claims are: (a) any claims against the Bank Group; (b) subject to the terms of this Plan, any claims against the Debtors, or its former professionals, officers, or directors; or (c) any other Litigation which belongs in whole or in part to the Debtors.

(Reorganization Plan § 1.72.) Section 1.72(c)'s reference to any "other" Litigation suggests subsections (a) and (b) also are types of Litigation. Under the Plan's structure, all Growers' Litigation Claims against ABT's former officers and directors are assigned to the Creditor Trust for the Trustee to pursue and prosecute, with the proceeds of any recovery being distributed pro rata according to the distribution priorities set forth in the Plan. (Reorganization Plan §§ 1.7, 1.48, 5.7, 5.17, 6.1, 6.5, 10.4.) Upon assignment, the Growers' fraud claims belonged to the Creditor's Trust, and thus became Litigation Claims, a subset of Litigation "of the Debtors or their Estates" under section 1.71. All Litigation, including a suit for fraud, is reserved and assigned to the Trustee unless expressly waived pursuant to section 10.4.

The Court does not find clear error in its prior ruling. Accordingly, the Court will deny Defendant Budd's motion for reconsideration.

## III. TRUSTEE'S STANDING TO BRING THIRD PARTY CLAIMS

■ Budd next argues that even if the Trustee has standing under the Plan, the Trustee lacks standing as a matter of law to bring third party or creditor claims. Budd relies primarily on *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), which held that a bankruptcy trustee lacks standing to assert misconduct claims on behalf of debenture holders against a third party indenture trustee, and *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir.1988), which held that a bankruptcy trustee cannot pursue third party creditor claims, even where the party assigned those claims to the trustee to pursue on their behalf. The Trustee responds that *Caplin* and *Williams* are distinguishable because in those cases, the trustee was not the real party interest. The Trustee argues that because the Growers assigned their claims and any recovery on the Growers' fraud claims will be distributed pro rata under the priorities set forth in the Plan, the Debtors are the real parties in interest and the Trustee has standing to pursue the Growers' claims.

■ The commencement of a bankruptcy case creates an estate, and the bankruptcy trustee is required to marshal all of the estate's property for the estate's benefit. 11 U.S.C. §§ 541(a), 704. Title 11 U.S.C. § 541 defines property of the bankruptcy estate in seven subsections. Under subsection (a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). This includes causes of action. H.R. Rep. 95–595, 95th Cong., 1st Sess. 367–68 (1977); S. Rep. 95–989, 95th Cong., 2d Sess. 82–83 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6323, 5787, 5868. A debtor's estate also includes "[a]ny in-

terest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). This includes causes of action assigned to the estate after the commencement of bankruptcy proceedings. *See Sheehan v. Richardson*, 315 B.R. 226, 238–39 (D.R.I.2004); *In re Ben Franklin Retail Stores, Inc.*, 225 B.R. 646, 650 (Bankr.N.D.Ill.1998), *rev'd in part on other grounds, In re Ben Franklin Retail Stores, Inc.*, 2000 WL 28266 (N.D.Ill.2000). Unlike subsection (a)(1), subsection (a)(7) property is not temporally limited to interests the estate holds "as of the commencement of the case." *In re Ben Franklin Retail Stores, Inc.*, 225 B.R. at 650; *In re Wilson*, 694 F.2d 236, 238 (11th Cir.1982).

■ Whether a bankruptcy trustee has standing to pursue a cause of action thus depends upon whether the cause of action belongs to the debtor's estate, either because it belonged to the debtor at the commencement of proceedings, or later became property of the estate under section 541(a)(7). The Supreme Court first explored the issue of trustee standing to bring certain causes of action in *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). In that case, the trustee in reorganization attempted to assert claims of misconduct by an indenture trustee on behalf of persons holding debentures issued by the bankrupt organization. *Caplin*, 406 U.S. at 416, 92 S.Ct. 1678. The Supreme Court held the trustee lacked standing to pursue these claims. *Id.* at 428–34, 92 S.Ct. 1678. The Supreme Court rested its holding on three concerns: (1) that the Bankruptcy Act then in effect contained no provision granting the trustee authority to collect money not owed to the estate; (2) the bankrupt organization had no independent claim of its own against the indenture trustee; and (3) a suit by the trustee would not bind the third party debenture holders, possibly resulting in conflicting results, proliferation of litigation, and questions regarding who is bound by the outcome of the trustee's litigation. *Id.*

Following *Caplin*, the United States Court of Appeals for the Ninth Circuit addressed the question of whether a bankruptcy trustee could pursue claims on behalf of third party creditors who assigned claims to the trustee. *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir.1988). In *Williams*, the trustee in bankruptcy solicited from creditors who invested in the bankrupt organization assignments of their claims against the bank that allegedly assisted in financing the bankrupt organization's Ponzi scheme. *Williams*, 859 F.2d at 665. Under the terms of the assignment, any recovery on the assigned claims first would be used to pay costs and expenses of pursuing the claims, with the balance to be paid to the investors who assigned their claims. *Id.* Investors who did not assign their claims would not receive any proceeds of the litigation. *Id.* The bank moved to dismiss on the ground that the trustee had no standing to bring the investors' claims. *Id.*

The Ninth Circuit concluded that the same concerns that motivated the Supreme Court's ruling in *Caplin* still existed under the facts presented in *Williams*, and therefore held that the trustee lacked standing to assert these third party creditor claims, even though the investors assigned those claims to the trustee. *Id.* at 666–67. First, the Court found that even though the investors assigned their claims, the investors remained the real parties in interest because the trustee and the estate would recover only administrative costs from a favorable judgment while the assigning investors would receive the bulk of any recovery. *Id.* "In reality, then, the creditors [ ] assigned their claims only for purposes of bringing suit. As a result, the

Trustee, as in *Caplin*, [was] attempting to 'collect money not owed to the estate.'" *Id.*

Second, the Court noted that the bankrupt corporation had no claim of its own against the bank. *Id.* at 667. Finally, the Court noted that "although those investors who assigned their claims are precluded from bringing individual suits, there remains the potential for inconsistent actions by those who did not assign." *Id.* The Court also expressed concern that giving the trustee standing to pursue these claims would not reduce litigation because other investors had not assigned their claims. *Id.* The Court thus held the trustee lacked standing to pursue these claims.[3] *Id.*

Since *Caplin*, courts addressing trustee standing generally have addressed what

causes of action belong to the trustee under section 541(a)(1) upon commencement of the bankruptcy proceedings.[4] Few cases have dealt with the central issue here, whether a trustee in bankruptcy has standing to pursue third party claims fully assigned to the trustee after commencement of the bankruptcy proceedings.

■■■■ The general rule is that an assignee of a claim has standing to assert the injury in fact suffered by the assignor. *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *Misic v. Bldg. Serv. Employees Health and Welfare Trust*, 789 F.2d 1374, 1378–79 (9th Cir. 1986). *Caplin* and *Williams* do not alter this usual rule in the bankruptcy context. In *Caplin*, the debenture holders did not

3. Congress has considered legislation that would have overruled *Caplin*, but chose not to do so. In 1978, Congress enacted the Bankruptcy Code. As part of the revision, the House originally proposed a subsection (c) to 11 U.S.C. § 544 which was intended to overrule *Caplin*. Subsection (c) would have provided that the trustee may act as a class representative to bring claims that a creditor or class of creditors had if the trustee could not otherwise recover on the claim involved, recovery would reduce the creditor's claims against the estate, the recovery would not create an allowable claim in favor of the defendant against the estate, and enforcement of the action would be in the estate's best interests. H.R. Rep. 95–595, 95th Cong., 1st Sess. 370–71 (1977). A judgment in such an action would bind all creditors that could have brought the claim, and any recovery would be for the benefit of those creditors only. *Id.* This provision was deleted without comment from the final version of the bill. 124 Cong. Rec. H 11097 (Sept. 28, 1978).

4. *See e.g., In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir.1999) (actions by creditors asserting a generalized injury to the debtor's estate which ultimately affect all creditors belong to trustee); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1094 (2d Cir.1995) (claims predicated upon the distribution of mislead-

ing documents to investors are the property of those investors, and may be asserted only by them because cause of action required proof that each individual investor relied on the misleading statement); *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 985–87 (11th Cir.1990) (trustee had no standing to assert against third party claims of certain individual creditors who purchased securities through the debtor on its margin account with the third party, which subsequently sold the securities); *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701–02 (2d Cir. 1989) (holding that third party creditor had no standing to pursue alter ego claim against bankrupt subsidiary's parent company; alter ego claim could be pursued by bankrupt organization under Ohio law and thus alter ego claim belonged to trustee); *Steyr–Daimler–Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir.1988) (finding alter ego claim belonged to debtor's estate over which trustee has full authority); *In re Ozark Restaurant Equip. Co., Inc.*, 816 F.2d 1222, 1227–30 (8th Cir.1987) (trustee could not pursue alter ego claim to pierce its own corporate veil where state law did not permit corporation to pierce its own veil; such a claim belonged to estate's creditors); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1344 (7th Cir.1987) (whether alter ego belongs to estate or creditors is a question of state law).

assign their claims to the trustee, and the trustee otherwise had no standing to pursue those third party claims. In *Williams*, although the creditors assigned their claims to the trustee, they assigned only the right to bring the suit, not the right to recover on those claims. As a result, the trustee was attempting to collect money not owed to the estate on behalf of specified creditors. Thus under *Caplin* and *Williams*, for an assignment to give the trustee in bankruptcy standing to pursue causes of action, the assignment must make the claims property of the estate. *In re Ben Franklin Retail Stores, Inc.*, 225 B.R. at 650; *Finova Capital Corp. v. Lawrence*, 2000 WL 1808276, *2 (N.D.Tex. 2000) (unreported). "[The assignment of claims] cannot serve merely as a vehicle to allow the trustee to prosecute claims on behalf of a creditor." *Finova Capital Corp.* 2000 WL 1808276, at *2.

Here, the Plan assigns to the Trustee not just the right to bring the Growers' fraud claims, but the right to the proceeds from any recovery on those claims, to be distributed to creditors pro rata as set forth in the distribution priorities in the Plan. (Reorganization Plan §§ 1.7, 1.48, 5.1–5.19, 6.1–6.3, 6.5, 10.2.5, 10.4, 12.2.) Once the Growers absolutely and irrevocably assigned their claims to the Trustee, the right to sue on these claims became property of ABT's estate, and the Trustee thereby has standing to pursue those claims. *See Sheehan*, 315 B.R. at 238–39 (bankruptcy trustee has standing to sue on fully assigned claims).

The concerns that motivated the *Caplin* and *Williams* Courts are not present here. First, the Trustee is not attempting to collect money not owed to the estate. Because the Plan fully assigns the Growers' claims to the Trustee, those claims are property of the estate acquired after the commencement of the bankruptcy proceedings under section 541(a)(7), and any recovery on those claims will constitute money owed to the estate. The estate thus is the real party in interest because it will receive the full benefit of any recovery.[5]

Second, by virtue of the assignment, the Trustee has independent claims of its own against Budd, and is not acting only as a representative of certain creditors. There does not appear to be any reason why a trustee should be precluded from bringing assigned claims simply because absent the assignment the trustee would not have a claim. *See In re Southwest Supermarkets,*

---

**5.** That the creditors ultimately will benefit does not mean the estate is not the real party in interest:

> [I]t is important to note a fallacy in the argument that the claims asserted "really" belong to the investors/creditors. This argument often comes from the mistaken notion that the creditors are the ones who will receive the money anyway, so why not let them pursue the wrongdoers themselves and do away with the trustee. This argument misunderstands the nature of bankruptcy and the role of the trustee in bankruptcy. Bankruptcy is a collective debt collection device. Indeed, the trustee's job is to investigate the debtor's financial affairs, liquidate assets, pursue the debtor's causes of action, and acquire assets through the trustee's avoiding powers in order to make a distribution to creditors. "The concept of a trustee in bankruptcy is that of a creditor representative whose single effort will replace that of multiple and often wasteful and competitive efforts of individual creditors." 1 Daniel R. Cowans et al., Cowans Bankruptcy Law and Practice § 2.7, at 72 (1986 ed.). To find that the trustee has no standing to pursue causes of action belonging to the debtor because the recovery would only benefit the creditors is an absurd argument, given the fact that the trustee's goal is to make a distribution to creditors.

*In re Plaza Mortgage and Fin. Corp.*, 187 B.R. 37, 41–42 (Bankr.N.D.Ga.1995) (footnote omitted).

*L.L.C.*, 315 B.R. 565, 570 (Bankr.D.Ariz. 2004).

Finally, a suit by the Trustee would not, in and of itself, create conflicting results, proliferate litigation, or raise questions about who is bound by the outcome of the Trustee's litigation. Although the Trustee's litigation may result in conflicting results with litigation by Growers who did not assign their claims, that is no reason to invalidate the force and effect of the assignments by those Growers who did assign their claims:

> The potential for conflict between the trustee's pursuit of the assigned claims and the pursuit of the unassigned claims by the creditors who retained them is no greater than, and is probably less than, the potential for such conflict that existed among all of the creditors prior to the assignment. If such potential for conflict would not preclude one creditor from pursuing its own claim, it is difficult to see why it should preclude the trustee from pursuing such a claim when it is assigned to him.

*In re Southwest Supermarkets, L.L.C.*, 315 B.R. at 569 n. 10; *see also Semi–Tech Litig., LLC v. Bankers Trust Co.*, 272 F.Supp.2d 319, 324 (S.D.N.Y.2003) ("[T]here always is a risk, outside the bankruptcy context, that a non-assigning note or debenture holder may sue and obtain results inconsistent with a result obtained by an assignee of an identical claim, but that affords no basis for refusing to allow suit on assigned claims. The Court sees no basis for treating an assignee created by, or assignments made pursuant to, a Chapter 11 plan any differently.").

Furthermore, no question exists as to who is bound by the Trustee's litigation because the assignor-Growers fully assigned their claims against Budd to the Trustee. Because the assignor-Growers have assigned their claims, they cannot recover from Budd on the same fraud claims. *Castleman v. Redford*, 61 Nev. 259, 124 P.2d 293, 295 (1942) (absolute assignment vests title in assignee, even if side agreement between assignor and assignee would give some interest back to assignor; "[t]he debtor is completely protected by the assignment, and cannot be exposed to a second action brought by any of the parties, either the assignor or other, to whom the assignee is bound to account."). Consequently, although conflicting results may occur on fraud claims between assigning and non-assigning Growers, Budd will not face conflicting obligations on the assigning Growers' fraud claims. Those claims will be decided in one litigation pursued by the Trustee, and all assigning Growers are bound by that result.

Because the assignor-Growers assigned their claims in full to the Trustee under the Plan, those claims became property of the estate under section 541(a)(7) which the Trustee has standing to pursue. The Court therefore will deny Budd's motion to dismiss the fraud claims for lack of standing.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Richard P. Budd's Motion for Reconsideration and Memorandum of Points and Authorities in Support CV–S–02–0885 (Doc. # 685) is hereby DENIED.