685 So.2d 1029 (1997)
NERBONNE, N.V., etc., Appellant,
v.
LAKE BRYAN INTERNATIONAL PROPERTIES, etc., et al., Appellees.
No. 94-2916.
District Court of Appeal of Florida, Fifth District.
January 10, 1997.
*1030 Arnaldo Velez of Taylor, Brion, Buker & Greene, Miami, and Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for Appellant.
Terry L. McCollough, P.A., and William G. Osborne, P.A., Orlando, for Appellees.
PETERSON, Chief Judge.
Nerbonne, N.V., ("Nerbonne") appeals a summary final judgment dismissing its third party complaint filed in response to a mortgage foreclosure instituted by Lake Bryan International Properties, Inc. ("Lake Bryan") against Nerbonne.[1] The gravaman of Nerbonne's claims centers on the alleged fraud of Robert Figueredo, K. Dwight Waters[2] and corporations controlled by them.
Nerbonne alleges in its third party complaint that Figueredo formed Nerbonne to purchase a large tract of land as an investment and induced individuals to purchase capital stock of the corporation for a minimum purchase of $100,000. The stock offering memorandum represented that the purchase price of the land would be $5.1 million. The offering memorandum did not disclose that shortly before Nerbonne purchased the land for $5.1 million, the following took place: Figueredo, Waters, and the corporations controlled by them, Euro American Investment Corporation (EAIC), Euro American Properties, S.A. (EAP), Waterford Group, and Lake Bryan had conspired to purchase the land for only $2.4 million and had an agreement to share any undisclosed profits upon resale of the land. In sum, Figueredo and Waters allegedly conspired to share the undisclosed *1031 difference between $2.4 million and $5.1 million.
The portion of the purchase price not paid in cash by Nerbonne was in the form of a $2,550,000 mortgage to Lake Bryan, which, as noted, is allegedly another Waters entity incorporated to complete Figueredo's and Waters' conspiracy. Lake Bryan was to assist in the resale of the land by obtaining the purchase money mortgage, collecting payments, and assigning individual interests in the mortgage to third parties, including appellee James Hickman.[3] The instant action was stimulated on February 10, 1989, by Lake Bryan's complaint for foreclosure in which Lake Bryan alleged the mortgage was in default in the amount of $574,890. Ultimately, the trial court entered a summary judgment of foreclosure for Lake Bryan and dismissed the third party claims. In this appeal, Nerbonne appeals only the summary judgment eliminating its claim against the third parties, Figueredo, Waters, and the corporations controlled by them.
Nerbonne pled five causes of action against the third party defendants, all based on Figueredo's alleged double dealing. The trial court did not state the grounds relied upon to grant the summary judgment. Therefore, we look to the third party defendants'/appellees' (hereinafter "appellees") motion for summary judgment to narrow the issues on appeal and find that the appellees relied upon the grounds that Nerbonne's third party claims were barred by the statute of limitations.
The appellees assert that the four year limitations period of sections 95.11(3) and 95.031, Florida Statutes (1995), applicable to actions for breach of fiduciary duty, intentional torts and negligence, began running in 1983 when the real estate was purchased or at the latest, in 1987 when a complaint in the Orange County Circuit Court was filed against Nerbonne by Tinwood, N.V., in 1987. The allegations in this Tinwood complaint summarily described the manner in which Figueredo and his corporation, EAIC, were to realize a profit from the spread between the undisclosed purchase price and the actual purchase price to Nerbonne. The allegations also describe a similar transaction used to inflate the price of other real estate purchased by Tinwood. Nerbonne was named as a defendant in the Tinwood complaint because Figueredo and his corporation, EAIC, were alleged to have used $100,000 of Tinwood's funds to pay for the property acquired by Nerbonne. The appellees argue that since Figueredo and his corporation, EAIC, were aware of the Tinwood complaint served upon EAIC as managing agent of Nerbonne and because Figueredo and EAIC were alleged to be conspirators in the fraud, Nerbonne was aware of its agents' actions as early as 1987. Therefore, since Nerbonne did not file its third party complaint against them until 1992, its action is barred by the limitations period.
In order for appellees' statute of limitations argument to prevail, knowledge of the suit must be imputed to Nerbonne from Nerbonne's agents, Figueredo and EAIC. We hold that the imputation did not take place based on the exception stated in Joel Strickland Enterprises, Inc. v. Atlantic Discount Company, 137 So.2d 627 (Fla. 1st DCA 1962). That exception bars imputation of knowledge from the agent to the corporation when the agent's conduct raises a clear presumption that he would not communicate to the principal the facts in controversy. The allegations of Nerbonne's complaint describe such conduct in this case: Figueredo and his corporations, including EAIC, are accused of acting for Figueredo's own personal interest and adversely to the principal, Nerbonne.
Notwithstanding this adverse interest exception, Figueredo argues that a further rule of law, known as the "sole actor" doctrine, sustains his position. The sole actor doctrine states that the adverse interest exception does not apply where the transaction on behalf of the principal is entrusted solely to the officer or agent having the knowledge. The case Figueredo cites for this proposition, however, shows that the sole actor doctrine is not universally applicable. Griffith Motors, Inc. v. Parker, 633 S.W.2d *1032 319 (Tenn.App.1982) (accounting firm sued for failure to discover client's employee's theft cannot prevail on theory that employee's knowledge is imputed to client). Nerbonne more persuasively argues that the sole actor doctrine should be applied only when the controversy is between the corporation and a wronged third party, as where the third party is defrauded by the agent acting in the course of his employment. In such a case it would make sense to impute the agent's knowledge to the corporation, so that the corporation, rather than the third party, should suffer at the hands of the corporate agent. A third party is not involved in the instant situation and we do not interpret the sole actor doctrine under the facts of this case as allowing Figueredo to impute knowledge of his unreported wrongdoing to the target of the alleged fraud, the principal, Nerbonne.
The appellees also argue that Nerbonne was on notice of the alleged fraud as early as 1991 because the attorney representing Tinwood in its suit against Nerbonne also represented a shareholder of Nerbonne and attended Nerbonne's 1989 shareholders meeting as the shareholder's proxy. Figueredo concludes that the attorney must have told the shareholders about Figueredo's fraudulent behavior. The record before us does not support this conjecture nor does Figueredo indicate how the attorney's knowledge is imputed to Nerbonne. At the most, Figueredo's arguments raise unresolved issues of fact regarding the time Nerbonne became aware of the alleged fraud which do not support a summary judgment.
In conclusion, the summary judgment based upon the statute of limitations was premature because the point in time Nerbonne became aware of Figueredo's and his corporation's dealings cannot be ascertained at this juncture independent of imputation of Figueredo's knowledge to Nerbonne.
REVERSED and REMANDED.
W. SHARP and GRIFFIN, JJ., concur.
NOTES
[1] This action was the subject of an earlier appeal. Nerbonne, N.V. v. Lake Bryan Int'l. properties, Inc., 593 So.2d 1206 (Fla. 5th DCA 1992).
[2] Although Waters was joined as a third-party defendant and filed defensive motions, it does not appear from the record that a disposition of the claim against him has been concluded by the trial court.
[3] Hickman was not a party/plaintiff at the inception of the mortgage foreclosure.