# Third District Court of Appeal

## State of Florida

Opinion filed April 3, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D23-0695 & 3D23-0824
Lower Tribunal No. 16-32842
_____

**Lemano Investments, LLC, etc.,**
Appellant,

vs.

**RGF Athena, LLC, etc.,**
Appellee.

Appeals from the Circuit Court for Miami-Dade County, Alan Fine and Lisa Walsh, Judges.

Marko & Magolnick, P.A., and Joel S. Magolnick and Lawrence B. Lambert, for appellant.

Lauri Waldman Ross, P.A., and Lauri Waldman Ross; Simon, Schindler & Sandberg LLP, and Neal L. Sandberg and Sherryll Martens Dunaj, for appellee.

Before LOGUE, C.J., and EMAS and MILLER, JJ.

LOGUE, C.J.

Lemano Investments, LLC appeals the trial court's summary final judgment in favor of RGF Athena, LLC in RGF Athena's action for rescission, quiet title, and declaratory relief. Because the trial court properly concluded there were no disputed issues of material fact and, as a matter of law, RGF Athena had a superior claim to title of the properties at issue, we affirm.

## BACKGROUND

The underlying action seeks to determine the rightful ownership of two properties located in Miami-Dade County, Florida. Two Florida limited liability companies, RGF Athena and Lemano Investments, each claim superior title to the properties. The source of the parties' conflict is Frederic Henry ("F. Henry"), who served as a manager for both companies and whose conduct both parties refer to as fraudulent.

During the relevant time period, F. Henry was a manager and part owner of RGF Athena, a manager of Lemano Investments, and a 50% owner and manager of a third company, Minvest USA, LLC. These three companies engaged in the business of real estate investment. Both RGF Athena and Lemano Investments ultimately claim to be victims of F. Henry. To untangle the facts surrounding the transfer of the properties at issue, some background on RGF Athena, Lemano Investments, and Minvest USA, as well as their business dealings is necessary.

2

A. <u>RGF Athena, LLC</u>

RGF Athena was formed in furtherance of a Joint Venture Agreement between Pauliflo, LLC, Geoffroy Lecat, and F. Henry. The purpose of the Joint Venture was to purchase real property for renovation and resale. Pauliflo owned 50% of RGF Athena and provided the capital for acquisition of the properties purchased by the company. Lecat and F. Henry, in turn, each owned 25% of RGF Athena and served as managers.

The Joint Venture Agreement expressly provided that: (1) "All decisions with respect to the management and control of the Joint Venture shall require approval by Pauliflo."; (2) "[N]o Party shall have the right to legally bind the Joint Venture or [RGF Athena] to commitments or contractual arrangements with any third party on behalf of the Venture or [RGF Athena] with regard to the Property without the express written consent and signature of Pauliflo."; and (3) "No act shall be taken, sum expended, or obligation incurred by the Joint Venture or any of the venturers with respect to a matter within the scope of the activity of [RGF Athena] unless such decisions are first approved by Pauliflo in writing." The Joint Venture Agreement listed the acts and duties the managers were responsible for but required "the approval nevertheless of Pauliflo."

RGF Athena's Operating Agreement placed similar restrictions on the managers' powers, requiring Pauliflo's approval for the sale, transfer, or disposition of company property.

On March 29, 2016, RGF Athena purchased real property located at 1842 N.W. 74th Street, Miami, FL 33147 (the "1842 Property"). RGF Athena paid the closing agent the full purchase price of $105,992.60 for the property and received a warranty deed after closing, which was recorded on April 4, 2016.

On March 30, 2016, RGF Athena purchased real property located at 5600 N.E. 1st Court, Miami, FL 33137 (the "5600 Property"). RGF Athena paid the closing agent the full purchase price of $165,407.37 for the property and received a warranty deed after closing, which was recorded on April 7, 2016.

B. Lemano Investments, LLC

The electronic articles of organization filed with Florida's Secretary of State for Lemano Investments listed F. Henry as the managing member and manager. No valid operating agreement was ever produced for the relevant time period. Lemano Investments denied that F. Henry ever owned or held any membership interest in the company. Lemano Investments did acknowledge, however, that it appointed F. Henry as its manager and gave

4

him control over its funds and activities. Lemano Investments also acknowledged F. Henry was "the person solely responsible for the operations of Lemano in the United States."

Lemano Investment's corporate representative, Richard Henry (F. Henry's brother), testified that, ultimately, F. Henry "was using Lemano for his own personal purposes, and had the ability to do so because he had full control over the bank accounts." Richard Henry stated he did not check Lemano Investments' books and records because, in large part, he trusted his brother to act honestly.

C. Lemano Investments' Dealings with Minvest USA

Minvest USA was a Florida limited liability company owned by F. Henry and Lecat, to which Lemano Investments would provide investment funds for the purchase of real estate in Florida. Minvest USA was supposed to assist Lemano Investments in locating investment properties, administering the purchase of properties, rehabilitating properties as necessary, leasing properties, collecting rents, and selling properties.

Richard Henry attested to the informality of Lemano Investments and Minvest USA's arrangement. He stated there were no real estate purchase agreements, no written management agreement between Minvest USA and

Lemano Investments, no warranty deeds, no title insurance, no legal opinions, and no executed closing statements.

Instead, Richard Henry explained that the funds Lemano Investments provided Minvest USA were "not tied to any specific property, but properties in general." F. Henry would advise of available investment properties and the approximate average amount necessary to purchase the properties and then would transfer money from Lemano Investments' bank account to Minvest USA's bank account. F. Henry had sole authority to make these transfers and acted on behalf of Lemano Investments in disbursing funds to Minvest USA.

After that, a particular property might find its way to Lemano Investments, almost always through one or more intermediate transfers. The properties rarely came to Lemano Investments directly from Minvest USA. Instead, the deeds Lemano Investments would receive would come from other entities in which F. Henry and Lecat had interests.

D. Transfers at Issue

F. Henry created two quit-claim deeds purporting to transfer the 1842 Property and the 5600 Property from RGF Athena to Lemano Investments. Both quit-claim deeds stated in the top left-hand corner: "Prepared by and return to: Attn: Mr. Frederic Henry Lemano Investments LLC." Both quit-

claim deeds listed RGF Athena as the Grantor and Lemano Investments as the Grantee. Both deeds were executed by F. Henry as "Manager" of RGF Athena.

Both quit-claim deeds bore the following language in bold, capitalized print:

> NOTICE TO RECORDER: MINIMAL DOCUMENTARY STAMPS ARE BEING PAID UNDER THIS QUITCLAIM DEED BECAUSE MINIMAL CONSIDERATION IS BEING PAID BETWEEN GRANTEE AND GRANTOR FOR THE TRANSFER OF THE PROPERTY. DOCUMENTARY STAMPS WAS PAID UNDER THE WARRANTY DEED RECORDED IN OFFICIAL RECORDS BOOK 30028, AT PAGE 1426, IN THE PUBLIC RECORDS OF MIAMI DADE COUNTY, FLORIDA. THIS QUIT CLAIM DEED IS TRANFERRING SUBSTANTIALLY ALL OF THE GRANTOR'S ASSETS.

Two months after the quit-claim deeds were issued, RGF Athena's legal counsel advised F. Henry that the company's other members had removed him as manager due to his actions that had adversely and severely affected the company, including "the fraudulent and unauthorized transfer . . . of two properties belonging to [RGF Athena] without consideration" to Lemano Investments. Two months after that, Lemano Investments also dismissed F. Henry.

7

E. Course of Proceedings Below

RGF Athena thereafter filed suit against Lemano Investments, alleging claims for quiet title, rescission, declaratory relief, accounting, and, alternatively, for imposition of equitable liens or constructive trusts on the 1842 Property and the 5600 Property. RGF Athena alleged F. Henry fraudulently transferred the 1842 Property and the 5600 Property to Lemano Investments, without authority or consideration, in violation of RGF Athena's Operating Agreement and Joint Venture Agreement. RGF Athena further alleged that F. Henry's knowledge of the fraud was "imputed to Lemano, which knew and had notice that the [quit-claim] conveyances were fraudulent, unauthorized, without RGF's knowledge, and for no consideration to Lemano."

Lemano Investments generally denied the allegations and claimed it "lawfully acquired and holds title" to the 1842 Property and the 5600 Property. It also alleged various affirmative defenses, including that it was an innocent purchaser, that RGF Athena's recovery was barred by unclean hands, unconscionability, and equitable estoppel, and that F. Henry was acting adversely to Lemano Investments' interests when he transferred the properties. RGF Athena filed a reply to the affirmative defenses.

8

RGF Athena filed a motion for summary judgment seeking a determination that it owned the 1842 Property and the 5600 Property. It asserted the following facts were undisputed: (1) RGF Athena paid money to acquire the 1842 Property and the 5600 Property; (2) F. Henry transferred title of the 1842 Property and the 5600 Property from RGF Athena to Lemano Investments without RGF Athena's knowledge and consent; (3) Lemano Investments never paid anything to RGF Athena for these properties; (4) Lemano Investments did not pay any consideration to RGF Athena for the quit claim deeds to the 1842 Property and the 5600 Property; (5) F. Henry's transfer of the properties to Lemano Investments violated RGF Athena's Operating Agreement and Joint Venture Agreement and was adverse to RGF Athena's interest; (6) Lemano Investments was not a bona fide purchaser of the properties; and (7) F. Henry was solely in charge of Lemano Investments and was allowed to operate as its sole actor with no oversight.

Lemano Investments filed a response in opposition, contending they originally paid Minvest USA the sum of $170,310.00 for the purported purchase of a property located at 2539 N.W. 103rd Street, Miami, FL 33147. When they began inquiring regarding the status of the property, however, F. Henry stated the property was unavailable and persuaded Lemano Investments to accept the 1842 Property as a replacement for the price

9

already paid. They made similar allegations regarding the 5600 Property, contending it was offered as a replacement for another property for which Lemano Investments had already paid Minvest USA $319,000 that was no longer available. Thereafter, they received the quit-claim deeds to the 1842 Property and the 5600 Property from RGF Athena.

Lemano Investments argued F. Henry was a manager and member of RGF Athena and acted unilaterally on behalf of the company at all relevant times. Lemano Investments further argued it did not benefit from F. Henry's fraud because it paid approximately $490,000 total for the 1842 Property and the 5600 Property. Lemano Investments noted that the funds were transferred to Minvest USA while F. Henry served as RGF Athena's manager and while, it alleged, RGF Athena was entirely under his control. Lemano Investments contended, therefore, that any fraud or damage RGF Athena allegedly incurred arose, not from any act or omission of Lemano Investments, but rather form the failure of RGF Athena's own manager and owner to transfer the money to it that Lemano Investments paid for the properties.

Lemano Investments also disputed the applicability of the sole actor doctrine and argued RGF Athena had not produced any admissible evidence to show that F. Henry and Lemano Investments were alter egos or that the

distinction between them was indiscernible. Finally, Lemano Investments argued RGF Athena failed to address its affirmative defenses. Lemano Investments argued the foregoing set forth disputed issues of material fact that precluded summary judgment.

On October 27, 2022, the trial court conducted a hearing on RGF Athena's motion for summary judgment. Following the hearing, the trial court issued a detailed 16-page Order Granting RGF Athena's Motion for Summary Judgment. This appeal followed.

## LEGAL ANALYSIS

This Court reviews a trial court's order on a motion for summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

Lemano Investments contends the trial court erred in entering summary judgment in favor of RGF Athena in several respects. Each of Lemano Investments' arguments, however, fails to set forth reversible error. Lemano Investments fails to demonstrate that any material facts are in dispute. Lemano Investments' contention that RGF Athena failed to address its affirmative defenses, moreover, is both factually incorrect and demonstrates a fundamental misunderstanding of the parties' burdens under the new summary judgment standard. Finally, Lemano Investments'

11

contention that the trial court misapplied the sole actor doctrine is without merit based on the undisputed facts presented.

A. RGF Athena Presented Undisputed Evidence Establishing Its Claims for Quiet Title and Rescission.

It is undisputed that RGF Athena paid the purchase price for the 1842 Property and the 5600 Property and received title to each. It is also undisputed that RGF Athena's Joint Venture and Operating Agreements provided that F. Henry could not transfer the properties without the express approval of Pauliflo, which was not obtained. It is further undisputed that Lemano Investments did not provide RGF Athena with any compensation or consideration for the quit claim deeds to the 1842 Property and the 5600 Property.

As such, RGF Athena established that the quit-claim deeds from RGF Athena to Lemano Investments for the 1842 Property and the 5600 Property were executed by F. Henry without authority and fraudulently transferred the properties to Lemano Investments without consideration. Such deeds procured by fraud are voidable in equity. McCoy v. Love, 382 So. 2d 647, 649 (Fla. 1979). Accordingly, the trial court correctly concluded RGF Athena sufficiently met its burden to establish its claims.

12

B. Lemano Investments' Affirmative Defenses Did Not Preclude Entry of Summary Judgment.

Lemano Investments' defenses to RGF Athena's claims did not preclude entry of summary judgment because Lemano Investments failed to put forth sufficient evidence demonstrating that its defenses were applicable and created disputed issues of material fact.

A plaintiff need not disprove all affirmative defenses. Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1264 (11th Cir. 2001) (noting "burden is on defendant to adduce evidence supporting affirmative defense, not upon movant to negate its existence" (citing Harper v. Del. Valley Broads., Inc., 743 F. Supp. 1076, 1090–91 (D. Del. 1990)).

Lemano Investments' defenses centered on its contention that it was an innocent or bona fide purchaser of the 1842 Property and the 5600 Property because it paid money to Minvest USA for two properties that it ultimately did not receive, and it was told the 1842 Property and the 5600 Property would be transferred to it as replacements for the properties it originally paid for.

"A party is a bona fide purchaser for value when: '(1) the purchaser obtained legal title to the challenged property, (2) the purchaser paid the value of the challenged property, and (3) the purchaser had no knowledge of the claimed interest against the challenged property at the time of the

13

transaction.'" 2000 Presidential Way, LLC v. Bank of N.Y. Mellon, 326 So. 3d 64, 68 (Fla. 4th DCA 2021) (quoting Harkless v. Laubhan, 278 So. 3d 728, 733 (Fla. 2d DCA 2019)).

Here, the problem with Lemano Investments' position is severalfold. First, Lemano Investments did not produce any evidence that Minvest USA ever owned or held title to the properties and thus there was no evidence that Minvest USA had the legal ability to transfer the properties to Lemano Investments as replacements for the properties previously offered. Second, Lemano Investments could not produce any evidence that it paid any money to RGF Athena to purchase the properties so that it might then transfer the properties to Lemano Investments. Finally, even if it could be said that Lemano Investments paid value for the properties, it cannot establish that it had no knowledge of RGF Athena's interest in the properties. This is because at the time of the transaction F. Henry was manager of both RGF Athena and Lemano Investments. As such, knowledge of his misconduct is imputed to Lemano Investments based on the sole actor exception but is not imputed to RGF Athena based on the adverse interest exception.

Generally, a corporation may be liable for the acts of an agent taken in the course and scope of his employment, except where the agent acts adversely to the corporation's interest. In such instances, the agent's

14

knowledge and misconduct are not imputed to the corporation. See Seidman & Seidman v. Gee, 625 So. 2d 1, 3 (Fla. 3d DCA 1992). However, there is an exception to the exception.

The adverse interest exception to the imputation rule has been held inapplicable "where the transaction on behalf of the principal is entrusted solely to the officer or agent having the knowledge." Nerbonne, N.V. v. Lake Bryan Int'l Props., 685 So. 2d 1029, 1031 (Fla. 5th DCA 1997). See also O'Halloran v. PricewaterhouseCoopers LLP, 969 So. 2d 1039, 1045 (Fla. 2d DCA 2007). The "sole actor doctrine" may be invoked by an innocent third party against the corporation because in such circumstances it "make[s] sense to impute the agent's knowledge to the corporation, so that the corporation, rather than the third party, should suffer at the hands of the corporate agent." Nerbonne, N.V., 685 So. 2d at 1032. By wholly entrusting a matter to its agent, the corporation bears the risk that such an unaccountable agent will act adversely to the corporation's interest.

Here, F. Henry executed the quit-claim deeds transferring the 1842 Property and the 5600 Property on behalf of RGF Athena to Lemano Investments without the prior approval of Pauliflo, thus violating RGF Athena's Joint Venture and Operating Agreements. Under the adverse interest doctrine, F. Henry's misconduct and knowledge of the fraud could

not be imputed to RGF Athena because his actions were adverse to the company's interests, and Pauliflo was an innocent decisionmaker. See O'Halloran, 969 So. 2d at 1045 (stating that "the presence of any innocent decision-maker in the management of a corporation can provide the basis for invoking the adverse interest exception, preventing the imputation of wrongdoing").

In contrast, Lemano Investments' corporate representative Richard Henry testified that F. Henry was solely responsible for transacting the company's business. Lemano Investments acknowledged that it appointed F. Henry as its manager and gave him full control over its funds and activities. By wholly entrusting the running of the company to F. Henry, Lemano Investments bore the risk that F. Henry's misconduct would be imputed to the company. Under the circumstances, the trial court properly applied the sole actor doctrine to impute F. Henry's knowledge of his misconduct to Lemano Investments, rendering its bona fide purchaser defense inapplicable.

## CONCLUSION

Because the trial court properly concluded there were no disputed issues of material fact and, as a matter of law, RGF Athena had a superior claim to title of the properties at issue, we affirm.[1]

---

[1] Lemano Investments also appeals a subsequent cost judgment in favor of RGF Athena as the prevailing party and argues only that the cost judgment should be reversed if the summary final judgment is reversed. Because we affirm the underlying judgment, we also affirm the cost judgment.